STATE of Wisconsin, Plaintiff-Respondent,

v.

Jamie L. GOODRUM, Defendant-Appellant. †

Court of Appeals

*No. 89-0256-CR. Submitted on briefs September 11, 1989.—Decided October 3, 1989.*

(Also reported in 449 N.W.2d 41.)

†Petition to review denied.

541

For defendant-appellant there were briefs submitted by *Raymond S. Huber* of Clintonville.

For plaintiff-respondent there was a brief submitted by *Donald J. Hanaway,* Attorney General, and *James M. Freimuth,* Assistant Attorney General of Wisconsin Department of Justice of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Jamie Goodrum appeals a judgment of conviction for two counts of first-degree murder, and an order denying postconviction relief. Her appeal is based on: 1) the trial court's failure to suppress statements taken during an allegedly pretextual probation hold; 2) the public defender's failure to obtain necessary medical and psychological testing because of lack of funds; 3) prosecutorial misconduct; and 4) the trial court's abuse of discretion at sentencing. Because these arguments are either without merit or were not made at trial, we affirm both the conviction and the post-trial order.

At approximately 11:30 a.m. on May 2, 1987, Goodrum notified the Vilas County Sheriff's Department that her two young sons had been kidnapped. She told the officers that while returning from purchasing groceries, she had stopped at a wayside because of car trouble. While looking under the hood, she noticed a van pulling up alongside, and then someone placed a cloth over her face, causing her to lose consciousness. When she awoke, her children, Daniel, age fourteen months, and Nathaniel, age six weeks, were missing.

The department was unable to find footprints, tire tracks, or any other evidence to corroborate Goodrum's story. Additionally, workers at the grocery store stated she was not with her children while shopping that day. That evening sheriff's department officers twice interviewed Goodrum and confronted her with the results of their investigation. Goodrum stood by her story.

Following the interviews, the investigating officers called her probation agent, Richard Peterson, and told him of the day's events and what their investigation had revealed. Peterson issued an order for a probation hold and Goodrum was picked up at 5 a.m. on May 3.

While in custody on the probation hold, Goodrum was read her *Miranda*[1] rights. At about 8 a.m., she gave a statement admitting that she had lied about bringing the children into the grocery store because she did not want her husband to know she had left them unattended in the car. The rest of her story remained unchanged.

Around noon the bodies of the two young children were found near a logging road. Daniel was gagged, bound by electrical tape, and had his head covered by a pillow case. Both of their skulls had been crushed by a blunt object.

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

At 7:30 p.m., the officers again interviewed Goodrum. They read her the *Miranda* rights, and told her that they had found footprints and tire tracks similar to hers at the murder scene. After waiving her *Miranda* rights, Goodrum then admitted killing her children with a hammer. She was charged with two counts of homicide and pled not guilty and not guilty by reason of mental disease or defect.

Goodrum moved to have her statements and the physical evidence stemming from them suppressed on the grounds that her probation hold had been an improper pretextual arrest. The trial court denied these motions.

A bifurcated trial was held. The guilt phase was tried before the trial court, which found Goodrum guilty on two counts of first-degree murder. The responsibility phase was tried before a jury drawn from Chippewa County. It found that Goodrum was not suffering from a mental disease or defect. Goodrum was sentenced to two consecutive terms of life imprisonment.

Goodrum filed post-trial motions for a new trial and for an order directing the state to pay for the costs of further medical and psychiatric tests. The trial court denied these motions.

On appeal, Goodrum argues that her detainment on a probation hold was an impermissible pretextual arrest, and that evidence obtained during or because of the hold should be suppressed. A probationer may be taken into custody and detained for an investigation of an alleged violation. Wis. Admin. Code sec. HSS 328.22(2) (July 1987). However, the fourth amendment requires that searches and seizures be reasonable. *State v. Tarrell,* 74 Wis. 2d 647, 652, 247 N.W.2d 696, 700 (1976). Reasonableness is to be determined by the facts and circum-

stances presented in each case. *Id.* If the historical facts are undisputed, whether Goodrum's detention was reasonable becomes a question of law, which we review without deference to the trial court. *See State v. Griffin,* 126 Wis. 2d 183, 198, 376 N.W.2d 62, 69 (Ct. App. 1985), *aff'd,* 131 Wis. 2d 41, 388 N.W.2d 535 (1986); *aff'd, Griffin v. Wisconsin,* 107 S. Ct. 3164 (1987).

The officers presented the following information to Peterson: Goodrum had reported the abduction of her two young sons by occupants of an unidentified van. The abduction was alleged to have taken place at 11 a.m. at a fairly busy public wayside. The children were missing. Only Goodrum's footprints and tire tracks were found around her vehicle. Two grocery store employees contradicted Goodrum's claim that she had brought the children to the store earlier that morning.

In *Wagner v. State,* 89 Wis. 2d 70, 277 N.W.2d 849 (1979), police requested a probation hold "because [the defendant] had changed his story, that 'things weren't adding up' and the department needed time to complete its investigation." *Id.* at 77, 277 N.W.2d at 852. The agent relied on these factors, among others, in authorizing the hold. *Id.* Our supreme court held that "[u]nder the circumstances of this case we conclude that the detention was used for proper and efficient investigation and interrogation . . .." *Id.* at 80, 277 N.W.2d at 853-54. In Goodrum's case, the police could have also requested that she be held on a probation hold. Instead, they merely communicated the results of their initial investigation to Peterson who independently made the decision to place Goodrum on a probation hold.

The trial court relied on *Griffin v. Wisconsin* to find the detention was reasonable. *Griffin* involved the search of a probationer's residence, but is still concerned with the fourth amendment standard for a "reasonable"

search or seizure. *Griffin,* citing the Wisconsin Supreme Court opinion appealed from, held that under Wisconsin law, a tip from a police detective that the probationer had or may have a weapon provided reasonable grounds for a search. The Court continued:

> [W]e think it reasonable to permit information provided by a police officer, whether or not on the basis of first-hand knowledge, to support a probationer search. The same conclusion is suggested by the fact that the police may be unwilling to disclose their confidential sources to probation personnel. For the same reason, and also because it is the very assumption of the institution of probation that the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law, we think it enough if the information provided indicates, as it did here, only the likelihood . . . of facts justifying the search.

*Id.* at 3171 (footnotes omitted). This same sort of evaluation of the "reasonableness" of the probation officer's actions applies equally under the fourteenth amendment to both searches and seizures. Peterson was justified in relying on the information given to him by the sheriff's department.

Evaluating the information provided by the officers, Peterson had a reasonable basis to believe that Goodrum had violated her probation. Peterson was notified that Goodrum had given a kidnapping report to the sheriff's department that was at odds with the physical evidence and witness statements the officers had been able to obtain. The investigation results indicated Goodrum was lying. The evidence strongly suggested that, at a minimum, there was reason to believe Goodrum was obstructing an officer by knowingly giving him false

information with intent to mislead him, in violation of sec. 946.41, Stats. Peterson therefore had reason to believe that Goodrum had committed a violation and was justified in ordering a probation hold.[2] Because the hold was not merely pretextual, and because there is no question that Goodrum was given her *Miranda* rights and she gave her statements voluntarily, there are no grounds to suppress those statements.

Next, Goodrum argues that the public defender's budgetary constraints prevented obtaining medical and psychological tests necessary to insure a fair trial. The trial court found that the issue had been waived because Goodrum failed to raise it until her post-trial motions, almost one year after the trial itself. We concur with the trial court's ruling.

Goodrum and her counsel failed to request, prior to or during the trial, that the court order additional medical and psychological tests. The court had the power to order these tests under sec. 971.16, Stats., at a time when an inquiry into the necessity of the tests and the tests themselves would not have disrupted Goodrum's trial.

---

[2] Under the fourth amendment, reasonableness is determined by the facts and circumstances in each case. In this case, infants too young to care for themselves were missing and Goodrum was the only person able to provide any information. Although we do not decide the issue on this basis, this fact can be an additional factor when determining reasonableness. Analogously, this court has held under the rescue doctrine that "[w]hile life hangs in the balance, there is no room to require admonitions concerning the right to counsel and to remain silent." *State v. Kunkel,* 137 Wis. 2d 172, 185, 404 N.W.2d 69, 75 (Ct. App.), *cert. denied,* 108 S. Ct. 297 (1987) (quoting *People v. Dean,* 39 Cal. App. 3d 875, 882, 114 Cal. Rptr. 555 (1974)). *Kunkel* also involved a parent who reported a kidnapping of a young (nine-month-old) child and who was later convicted of killing him.

Whether the failure to request the tests was a result of trial strategy or neglect,[3] Goodrum failed to preserve this issue for appeal when raising it for the first time almost one year after the trial.

Goodrum also claims that the prosecutor's various statements during the trial misled and prejudiced the jury. Specifically, she argues that the state misled the jury as to the circumstances of the murder weapon's discovery, mischaracterized the evidence regarding proof of mental disease or defect, and made improper and prejudicial remarks during closing arguments.

Failure to object during questioning waives alleged misconduct in the questioning. *Holmes v. State,* 76 Wis. 2d 259, 271–72, 251 N.W.2d 56, 62 (1977). Failure to object at the time of the alleged improprieties in the closing argument also waives review of that alleged error. *State v. Hoffman,* 106 Wis. 2d 185, 218, 316 N.W.2d 143, 161 (Ct. App. 1982). Additionally, a defendant must move for a mistrial to preserve the alleged error for appeal. *Haskins v. State,* 97 Wis. 2d 408, 424, 294 N.W.2d 25, 36 (1980). We hold that by failing to object to these statements during trial and to move for a mistrial, Goodrum has not preserved the right to contest the claimed errors. Again, it is untimely to initially raise these objections one year after the trial.

Next, Goodrum suggests that this court use its discretionary powers to order a new trial because justice has miscarried and because the underlying issues were not fully and fairly tried. *See State v. Penigar,* 139 Wis. 2d

---

[3] Goodrum does not argue that her trial attorney's failure to obtain these tests constituted ineffective assistance of counsel entitling her to a new trial. Accordingly, we do not address that issue.

569, 577–78, 408 N.W.2d 28, 32 (1987). We do not believe such a drastic remedy is appropriate in this case. Most of the circumstances Goodrum cites, such as the prosecutor's allegedly improper statements, do not approach grounds for a new trial. Goodrum's strongest argument in favor of a new trial is that medical and psychological tests that were suggested by the defense psychiatric expert, Dr. Robert Gale, were never performed. Several factors persuade us that this omission does not rise to the level where a new trial is required. Gale was still able to testify to a reasonable degree of medical certainty that Goodrum was suffering from a mental disease or defect that prevented her from conforming her conduct to the law. Additionally, there is no evidence that the absence of these test results harmed Goodrum's case. In fact, it could be argued with equal force that had the test results failed to disclose organic brain damage, much of Gale's testimony would have been undercut. Finally, the state's experts disputed the need for these additional tests. While in retrospect one may disagree with specific decisions made by Goodrum's counsel, we do not believe that justice has miscarried or that the issue of Goodrum's mental competency was not fully or fairly tried.

Finally, Goodrum argues that the trial court abused its discretion by sentencing her to consecutive, rather than concurrent, life terms without fully articulating the reasons. On appeal, our review is limited to determining whether the trial court abused its discretion in sentencing the defendant. *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633, 638 (1984). *Harris* supplies a list of factors the court *may* consider when imposing a sentence. They are the defendant's criminal record; history of undesirable behavior patterns; personality, character

and social traits; results of a presentence investigation; vicious or aggravated nature of the crime; degree of culpability; demeanor at trial; age, educational background, and employment record; remorse, repentance, and cooperativeness; need for close rehabilitative control; rights of the public; and length of pretrial detention. *Id.* at 623-24, 350 N.W.2d at 639.

Although Goodrum claims that the court should have granted her more time to prepare arguments for sentencing, the lengthy trial brought out extensive information on the *Harris* factors and both counsel were able to make oral arguments regarding appropriate sentencing. The judge's decision demonstrates a weighing of many of these factors, especially the brutal nature of the crime, Goodrum's "sociopathic characteristics" and the need for extended rehabilitation in a controlled setting. There was no abuse of discretion in sentencing Goodrum to two consecutive life terms.

*By the Court.*—Judgment and order affirmed.