Mark L. HANSEN, Carol Hansen, Melissa Hansen, a minor, by her Guardian ad Litem, Thadd J. Llaurado, Aetna Casualty & Surety Company, Plaintiffs-Respondents,

v.

CROWN CONTROLS CORPORATION, a foreign corporation, and International Insurance Company, Defendants-Appellants. †

Court of Appeals

*No. 92–3214. Oral argument October 21, 1993.—Decided December 7, 1993.*

(Also reported in 512 N.W.2d 509.)

†Petition to review pending.

675

677

678

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Ralph A. Weber, Brian G. Cahill*, and *Paul F. Heaton* of *Kravit, Gass & Weber, S.C.*, of Milwaukee, and *John C. Aisenbrey* of *Stinson, Mag & Fizzell*, of Kansas City, Missouri. There was oral argument by *Ralph A. Weber*.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *James J. Murphy* of *Murphy, Gillick, Wicht & Prachthauser*, of Milwaukee. There was oral argument by *James J. Murphy*.

Amicus Curiae brief was filed by *Lynn R. Laufenberg* and *Mark L. Thomsen* of *Cannon & Dunphy, S.C.*, of Milwaukee, for the Wisconsin Academy of Trial Lawyers. There was oral argument by *Lynn R. Laufenberg*.

Amicus Curiae brief was filed by *Jon P. Christiansen* and *James L. Huston* of *Foley & Lardner*, of Milwaukee, for Product Liability Council, Inc., and Wisconsin Manufacturers & Commerce. There was oral argument by *James L. Huston*.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. Crown Controls Corporation and International Insurance Company, Crown's excess-liability insurer, appeal from a judgment against them. The judgment was entered on a jury verdict awarding damages to the plaintiffs for injuries sustained by Mark L. Hansen when the dockboard on which he was driving a forklift truck collapsed. Crown, which manufactured the forklift truck, asserts that the trial court erred: (1) in formulating its jury instructions and the special verdict; (2) by not ordering a new trial because of alleged juror misconduct; and (3) by not ordering a new trial because of the alleged perverse nature of the verdict. We affirm.[1]

---

[1] Amici briefs have been submitted by the Wisconsin Academy of Trial Lawyers, and, in a joint submission, by the Product Liability Advisory Council, Inc., and the Wisconsin Manufacturers & Commerce.

## I.

A dockboard is a metal plate that bridges the gap between a loading dock and a truck trailer so that goods may be moved between the loading dock and the trailer. Hansen was injured when the dockboard involved in this case collapsed. The forklift truck he was operating at the time required the operator to stand rather than sit. When the dockboard collapsed, the forklift tumbled off. Hansen's left leg, which did not remain within the safety of the cab compartment, was crushed by the falling forklift. The plaintiffs claimed that Crown was at fault because the forklift cab did not have a door, which, they argued, would have protected Hansen's leg from injury.[2]

The trial court accepted plaintiffs' argument that the damage to Hansen's leg should be treated as an "enhanced injury" that was distinct from the injuries that he received from the fall alone. Accordingly, the trial court, over Crown's objections, instructed the jury that if it determined that Crown and either of the parties responsible for the dockboard were at fault in connection with their products, the jury should decide the percentage each party's fault contributed to the so-called "enhanced injury," the injury to Hansen's leg.[3]

---

[2] Before trial, the plaintiffs settled with those parties alleged to be responsible for the dockboard. The release was drafted to conform with *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963), and as a result of the release, Crown's financial responsibility for Hansen's injuries would be reduced by the percentage of fault for the injuries attributable to the released parties, *see id.*, 21 Wis. 2d at 193, 124 N.W.2d at 112.

[3] The case was given to the jury on both strict-liability and straight-negligence theories as to both the dockboard and the forklift truck. Strict liability, although it relieves the plaintiff from having to prove specific acts of negligence, is a species of

Although the jury determined that both of the parties responsible for the dockboard were at fault, the jury found that Crown alone was responsible for Hansen's leg injury.

## II.

### A. *"Enhanced Injury" Theory.*

Crown argues that by submitting to the jury plaintiffs' "enhanced injury" theory, the trial court improperly "prevented an allocation of fault among all substantial factors leading to [Hansen's] injuries." Crown's contentions of error are without merit.

A jury's specific apportionment of causation for separately-produced injuries makes sense and is consistent with Wisconsin law.

> Liability based on enhanced injury has been recognized in Wisconsin cases, . . . . These include second collision or crashworthiness cases, seat-belt cases, and successive tort-feasors in medical malpractice cases. In all these situations, the successive tort-feasor was alleged to have enhanced or aggravated the plaintiff's injuries, but was not alleged to have caused the initial accident or damage. In these situations, the successive tort-feasor is not jointly liable for all the injuries to the claimant, but only for those injuries caused by the tortious conduct over and above the damage or injury that would have occurred as a result of the accident absent the successor tort-feasor's conduct.

*Farrell v. John Deere Co.*, 151 Wis. 2d 45, 60-61, 443 N.W.2d 50, 54-55 (Ct. App. 1989) (footnotes omitted).

negligence—"akin to negligence per se." *Dippel v. Sciano*, 37 Wis. 2d 443, 461, 155 N.W.2d 55, 64 (1967).

In *Farrell*, the plaintiff was first injured when his arm was drawn into a corn picker. *Id.*, 151 Wis. 2d at 56, 443 N.W.2d at 53. Farrell's legs and other arm were then pulled into the machinery. *Ibid.* In his action against Deere, the manufacturer of the corn picker, Farrell claimed two separate mechanisms of injury. First, he claimed that Deere's failure to equip the corn picker with an interlock device caused his initial entanglement. *Id.*, 151 Wis. 2d at 57, 443 N.W.2d at 53. Second, he claimed that the injuries to his legs and other arm were caused by Deere's failure to outfit the picker with a device that would stop the machine in an emergency. *Ibid.* Over Deere's objection that there was but one occurrence, the trial court permitted the jury to consider the legs-and-other-arm claim, the so-called "enhanced-injury" claim, separately from Farrell's entanglement claim. *Id.*, 151 Wis. 2d at 61, 443 N.W.2d at 54. This allowed the jury to compare Farrell's contributory negligence with Deere's fault on each claim, rather than as to the occurrence as a whole. *Id.*, 151 Wis. 2d at 57-58, 443 N.W.2d at 54-55. We affirmed, seeing "no reason in logic or law why application of enhanced injury law should be precluded merely because the successive tort-feasor is alleged also to have tortiously caused the initial accident." *Id.*, 151 Wis. 2d at 62, 443 N.W.2d at 55.[4]

A defendant is not liable for its negligence unless that negligence was a substantial factor in producing plaintiff's injury as a natural and probable conse-

---

[4] Crown argues that *Farrell* was incorrectly decided. As a published decision, *Farrell* is precedent in this state. *In re Court of Appeals of Wisconsin*, 82 Wis. 2d 369, 371, 263 N.W.2d 149, 150 (1978). Accordingly, Crown's attempt to overturn *Farrell* must await its opportunity in another forum.

quence. *See Johnson v. Misericordia Community Hosp.*, 97 Wis. 2d 521, 561, 294 N.W.2d 501, 521 (Ct. App. 1980) ("[O]ne who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences of an act although an act of a third person contributes to the result."), *aff'd*, 99 Wis. 2d 708, 301 N.W.2d 156 (1981). Stated another way, although in a metaphysical sense all things have a cause, the "substantial factor" test denotes something more, namely, "that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." *Merco Distrib. Corp. v. Commercial Police Alarm Co., Inc.*, 84 Wis. 2d 455, 458-459, 267 N.W.2d 652, 654 (1978); *see also Austin v. Ford Motor Co.*, 86 Wis. 2d 628, 639, 273 N.W.2d 233, 237-238 (1979) (reason for one-car accident not necessarily "cause" of driver's death resulting from accident).

This case, even more than *Farrell*, concerns separate acts of alleged tortious conduct—the acts of the parties responsible for the dockboard were separate from anything Crown did or failed to do in connection with the forklift truck. Although it is true that if the dockboard had not collapsed, Hansen's leg would not have been injured, the jury was appropriately told that it could not find that the fault, if any, of those responsible for the dockboard was a "substantial factor" in causing Hansen's leg injury unless Crown proved "to a reasonable certainty, by the greater weight of the credible evidence" that the fault "had a substantial influence in producing" that injury. *See Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 354-359, 360 N.W.2d 2, 9-11 (1984) (not plaintiff's burden to

prove what his injuries would have been if defendant was without fault).[5] Crown had ample opportunity to persuade the jury that the dockboard collapse was a substantial factor (as opposed to an *in*substantial factor) in Hansen's leg injury. It failed.[6] The trial court's

---

[5] As pointed out by four justices in *Sumnicht*, the discussion in Justice Ceci's opinion for the court on this issue was *dictum* that was agreed to only by Justices Ceci, Day and Callow. *Id.*, 121 Wis. 2d at 379-380, 360 N.W.2d at 21 (Heffernan, C.J., concurring); 121 Wis. 2d at 381, 360 N.W.2d at 21-22. We adopted *Sumnicht*'s *dictum* on this issue, however, in *Maskrey v. Volkswagenwerk Aktiengesellschaft*, 125 Wis. 2d 145, 155-157, 370 N.W.2d 815, 820-821 (Ct. App. 1985).

[6] Plaintiff's engineering expert testified that in his view "had the identical failure occurred of the dock board [*sic*] and the forklift rolled out and turned over that had the Crown door been installed Mr. Hansen would not have the serious disabling injury which is what the enhanced injuries is referring to." In commenting during the hearing on motions after the verdict, the trial court observed: "[T]here was very little focus [by Crown] in my judgment on [those responsible for the dockboard] in being responsible for Mr. Hansen's damages. Maybe that's the reason why the jury found no causation against either [of them] for those damages." Crown contends that the plaintiffs are being over-compensated because of the settlement. The $500,000 settlement, they argue, is a lot of money unless the dockboard collapse was a cause of Hansen's leg injury. Perhaps, but that, however, is not the issue. As the release recites, those responsible for the dockboard settled with Hansen because they were unsure of the ultimate apportionment of fault for Hansen's serious leg injury. The settlement does not negate the verdict's finding that the fault of those who were responsible for the dockboard was not a substantial factor in causing the injury to Hansen's leg.

decision to permit the jury to decide that issue is consistent with the law in this state.[7]

In an argument related to its contention that the trial court should not have submitted the case to the jury on an "enhanced injury" theory, Crown suggests that the wording of the trial court's instructions required the jury to find, in effect, that the fault of those responsible for the dockboard was not a cause of Hansen's leg injuries. As pertinent to this argument, the trial court instructed the jury:

> The Hansens allege that Crown was negligent and put into the commerce stream an unreasonably dangerous defective forklift. They further allege that this negligent conduct was a substantial factor in causing Mr. Hansen's injuries to be far greater or enhanced than they would have been had Crown not been negligent. These allegations are all denied by Crown.
> The burden of proof on these allegations is upon the Hansens to convince you to a reasonable certainty by the greater weight of the credible evidence

---

[7] Insofar as Crown's argument on appeal suggests that the fault of those responsible for the dockboard caused Hansen's leg injury as a matter of law, that argument was waived because Crown did not ask the trial court to change the jury's answer to the verdict questions on that issue, and did not make that argument to the trial court. *See Mid-Continent Refrigerator Co. v. Straka*, 47 Wis. 2d 739, 749, 178 N.W.2d 28, 33-34 (1970) (matters not raised in motion for new trial not reviewable as of right). As already seen, the Wisconsin Supreme Court has noted that, under the law of this state, the reason for a one-car accident is not necessarily a "cause" of the driver's death resulting from that accident. *See Austin*, 86 Wis. 2d at 639, 273 N.W.2d at 237-238.·

that "yes" should be your answers as to questions one through four.[8]

Conversely, Crown alleges that others were responsible for these enhanced injuries to Mr. Hansen. Specifically, Crown asserts that the dock board [*sic*] was an unreasonably dangerous, defective product and that [those responsible for the dockboard], [Hansen's employer] and/or Mark Hansen were negligent and that their respective negligent conducts were singularly or jointly substantial factors in causing Mr. Hansen's injuries to be far greater or enhanced than they would have been had the respective inquiree not been negligent. These allegations are all denied by the Hansens.

The burden of proof on these allegations is upon Crown to convince you to a reasonable certainty by the greater weight of the credible evidence that "yes" should be your answers as to questions five through fourteen.[9]

The damage questions in the verdict form submitted to the jury by the trial court similarly focussed only on the so-called "enhanced injuries" sustained by Hansen.

---

[8] Questions one through four asked whether the forklift was unreasonably dangerously defective, whether Crown was negligent in the "design, construction or manufacture of the forklift," and whether the defect or negligence was "a cause of enhanced injuries to Mark Hansen."

[9] Questions five through fourteen asked whether the dockboard was unreasonably dangerously defective, whether the dockboard installer was negligent in the dockboard's installation, whether Hansen's employer was negligent, whether Hansen was negligent as to his own safety, and whether any such defect or negligence was "a cause of enhanced injuries" to Mark Hansen.

Crown had requested jury instructions and a special verdict that focussed on Hansen's "injuries" as a whole. Thus, at the hearing during which the trial court and the parties summarized the instruction conference, Crown argued that the jury should be "simply asked to apportion responsibility among all persons and entities who were substantial factors in bringing about Mr. Hansen's injuries of whatever kind and nature."[10] The plaintiffs, on the other hand, suggested dividing the jury's task into two parts. The pivotal causation question as proposed by the plaintiffs asked:

Assuming Mark Hansen's total injuries and damages to be 100 percent, what percentage of these injuries and damages do you find:

A. To be caused by the falling of the
 forklift from the dockboard. ———%

B. To be enhanced or increased due
 to the lack of adequate occupant
 protection on the forklift so as to
 reduce the extent or severity of
 injuries in the event of an accident. ———%

 TOTAL 100%

Following the instructions conference, the plaintiffs submitted a modified proposed special-verdict form that similarly separated the event into questions that asked about the cause of the accident on one hand and the cause of Hansen's enhanced injuries on the other hand, and, in the critical apportionment question,

---

[10] The instruction conference, which lasted the better part of a day, was not reported.

asked the jury to determine what "percentage of the total negligence that caused enhanced injuries to Mark Hansen do you attribute to A. The accident? B. Crown Equipment?"[11]

Although in retrospect, as Crown argues on this appeal, the trial court's instruction asking the jury to determine whether the fault of those responsible for the dockboard was a substantial factor "in causing Mr. Hansen's injuries to be far greater or enhanced than they would have been" if those responsible for the dockboard had not been at fault can be read as focussing too much on the enhanced injuries, the record does not reveal that Crown objected on this ground or that it adopted either of plaintiffs' proposals, both of which would have ameliorated this problem. Indeed, when

---

[11] Plaintiffs' proposed verdict form is similar to the approach advocated by the amicus brief submitted by the Product Liability Advisory Council and the Wisconsin Manufacturers & Commerce:

> Wisconsin's well-developed negligence law provides a completely logical process for the jury's determination of the relative responsibility of the parties in an enhanced injury case. The process would begin, as in all negligence cases, with a comparison of the causal negligence that caused the accident. Then, if there was evidence that a defect enhanced the plaintiff's injuries, the jury would determine liability for the enhanced injuries in a two-step process.

We commend to the trial courts, in appropriate cases, the approach suggested both by plaintiffs' counsel in this case, as evidenced by the proposed special-verdict forms it submitted to the trial court, and by the amicus-brief excerpt just quoted. This approach is also consistent with that advocated by the amicus brief submitted by the Wisconsin Academy of Trial Lawyers, which argues that under Wisconsin law liability for a plaintiff's injuries is apportioned between successive tortfeasors according to the "damages actually caused" by each.

689

the *plaintiffs* objected that there was insufficient evidence "that anything [those responsible for the dockboard] did or sold . . . caused [Hansen's] enhanced injuries," *Crown* disagreed: "As we discussed in chambers, there was evidence . . . with respect to the way in which the absence of panic stops [on the dockboard] enhanced the injury even under the enhanced injury approach adopted by plaintiffs." The instructions and verdict proposed to the trial court by Crown improperly lumped *all* of Hansen's injuries.into one apportionment pot. Crown was not a joint tortfeasor with those responsible for the dockboard in connection with those of Hansen's injuries that were not caused by the forklift, and an apportionment of causal fault with regard to those injuries would have been improper. *See Butzow v. Wausau Memorial Hosp.*, 51 Wis. 2d 281, 288-289, 187 N.W.2d 349, 352-353 (1971) (physician who treats negligently a person injured in an automobile accident not a joint tortfeasor with the person who caused accident); *see also Farrell*, 151 Wis. 2d at 60-61, 443 N.W.2d at 55.[12] Thus, Crown did not state with sufficient particularity its current objection to the trial court's jury instructions and verdict as required by Rule 805.13(3), Stats.[13] As reiterated in *State v. Gomaz*, 141 Wis. 2d 302, 321, 414 N.W.2d 626, 635

---

[12] In addition, the trial court pointed out that one of the problems it had with Crown's proposed special verdict form was that "it did not relate on a cause of action [*sic*, most likely "causation"] basis to the enhanced injuries."

[13] Section 805.13(3), Stats., provides:

INSTRUCTION AND VERDICT CONFERENCE. At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. . . . Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the

(1987): " 'The objection should be specific—it should not only identify the particular instruction or instructions objected to, but should also state what counsel contends is the proper instruction.' " (citation omitted). Accordingly, the issue has been waived.[14]

B. *Instructions on Failure to Warn.*

██

The trial court instructed the jury in connection with both the negligence and strict-liability claims that a manufacturer has a duty to "provide warnings concerning any dangerous condition of the product or any danger connected with its proper use of which [the manufacturer] knows or should know." Crown claims that there was no evidence to support these instructions. We disagree.

Plaintiffs' engineering expert testified that although Crown's sit-down forklift trucks came with warnings that if the truck tipped over the operators were to, as phrased by the expert, "remain with the forklift, to brace themselves, to lean forwards, to keep their body inside the confines of the protective zone

---

conference constitutes a waiver of any error in the proposed instructions or verdict.

[14] At oral argument, Crown argues that we should consider this issue irrespective of whether it made the requisite objection under Rule 805.13(3), Stats. This court has the discretionary authority under section 752.35, Stats., to reverse because of an improper jury instruction to which there was an insufficient objection only if we conclude that either the real controversy has not been tried or that there has been a miscarriage of justice. *Vollmer v. Luety*, 156 Wis. 2d 1, 13-22, 456 N.W.2d 797, 805 (1990); *see also id.*, 156 Wis. 2d at 27, 456 N.W.2d at 809 (Bablitch, J., concurring on behalf of six members of the court). Neither of these prerequisites is present here.

enclosure of the forklift," the stand-up forklift truck involved in Hansen's accident did not. The witness told the court and jury that "the absence of specific warnings and instructions telling the operator what to do in the event of either a collision or tipover" made the forklift truck defective and unreasonably dangerous as well as negligently designed, and that this was a cause of Hansen's enhanced injuries. The trial court's instructions were consistent with the facts of the case and the applicable legal principles.[15] *See Meurer v. ITT Gen. Controls*, 90 Wis. 2d 438, 448-449, 280 N.W.2d 156, 160 (1979) (a trial court's instructions to jury will be upheld

---

[15] Crown's argument that Hansen's admission that he did not read the forklift's instruction manual made the need for any warnings immaterial is without merit. The adequacy of warnings is determined by reference to their effect on a reasonable person. *See Schuh v. Fox River Tractor Co.*, 63 Wis. 2d 728, 739, 218 N.W.2d 279, 284-285 (1974) (" 'Implicit in the duty to warn is the duty to warn with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential danger.' ") (citation omitted). Similarly without merit is Crown's contention that Hansen in fact did what plaintiffs' expert witness suggested, namely, that he "just held on" to "the controls" when the forklift fell, so that Crown's failure to give that advice was not a causal of Hansen's leg injury. First, as we have already pointed out, it was not the plaintiffs' burden to prove the negative—a plaintiff need not demonstrate what his injuries might have been if the injuring product was not defective and unreasonably dangerous. *See Sumnicht v. Toyota Motor Sales*, 121 Wis. 2d 338, 354-360, 360 N.W.2d 2, 9-11 (1984). Second, plaintiffs' expert witness suggested warnings that were more elaborate and specific than just holding on, and, as noted, warnings must be sufficient to accommodate the danger. *See Schuh*, 63 Wis. 2d at 739, 218 N.W.2d at 284-285.

692

if consistent with facts of the case and applicable legal principles).

C. *Alleged Juror Misconduct.*

Crown seeks a new trial because two jurors used a weekend break in the jury's deliberations to look up various terms in dictionaries. One juror, Susan Hoeppner, submitted an affidavit to the trial court, and later testified at the hearing on post-verdict motions, admitting that she prepared a list of definitions for the words: "defective," "defect," "faulty," "neglect," and "negligent," from her Random House dictionary. Hoeppner testified that she distributed her list of definition excerpts to all of the jurors, and "as far as [she knew], they read it." The other juror, the foreman, testified that he looked up the words "enhanced" and "injury," and shared them with the other jurors. He did not testify, however, as to what he told them. The plaintiffs submitted affidavits from two other jurors. One stated that "most of the jurors" did not read Hoeppner's list of definitions. The trial court concluded that the juror's independent research was not prejudicial, noting that the jurors "had a full set of instructions in the jury room with them" for approximately "five hours and 15 minutes" on Friday, the first day of deliberations, before Hoeppner brought in her list of definition excerpts on Monday, after the weekend break.

 Rule 906.06(2), Stats., provides that a juror may testify, either in person or by affidavit, "on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror." Thus, it was appropriate for the trial

court to hold a hearing. *See Castaneda v. Pederson*, 176 Wis. 2d 457, 463, 500 N.W.2d 703, 706 (Ct. App. 1993), *review granted*, 177 Wis. 2d cxlvii, 505 N.W.2d 137 (1993). As we have previously noted:

> A party seeking to impeach a jury verdict in a civil case with evidence of juror-misconduct must clear three hurdles. First, the proffered evidence must be competent under Rule 906.06(2), Stats. Second, the proffered evidence must be "clear and convincing." Third, the competent evidence must show by the "clear and convincing" standard that the moving party was prejudiced[—]not in an analysis of the jurors' subjective thought processes, because that inquiry is forbidden by Rule 906.06(2), but, rather, " 'on the basis of the nature of the matter and its probable effect on a hypothetical average jury.' "

*Ibid.* (citations omitted). We review *de novo* the trial court's conclusion that a new trial is not warranted. *Id.*, 176 Wis. 2d at 463, 500 N.W.2d at 705.

■

Although Crown's submissions through juror testimony and affidavits establish that at least some of the jurors were exposed to extraneous material, Crown has not carried its burden of proving prejudice by the "clear and convincing" middle burden of proof. First, the record does not reveal what definitions of the words "enhanced" and "injury" the foreman shared with the jury. Thus, Crown has not demonstrated that those definitions were prejudicial to it. Second, although the trial court made no findings of fact on this point, the uncontradicted evidence in the record is that although Hoeppner made copies of her definition excerpts for all of the jurors, and, as far as she knew, they read what she distributed, not all the jurors did. Thus, her affidavit and testimony were not competent to impeach the

jury's verdict. *See State v. Messelt*, 178 Wis. 2d 320, 336-339, 504 N.W.2d 362, 368-369 (Ct. App. 1993) (Rule 906.06(2), Stats., does not permit a juror to testify whether "extraneous prejudicial information" was brought to the attention of jurors, unless it was brought to the attention of *all* the jurors) (withdrawing a statement to the contrary in *State v. Barthels*, 166 Wis. 2d 876, 892–893, 480 N.W.2d 814, 821-822 (Ct. App. 1992), *aff'd on other grounds*, 174 Wis. 2d 173, 495 N.W.2d 341 (1993)), *review granted*, 179 Wis. 2d clxxv, 510 N.W.2d 136 (1993). Accordingly, the trial court's decision not to order a new trial because of alleged juror misconduct is affirmed.

D. *Alleged Perverse Verdict.*

Crown claims that the verdict's award was excessive and that this resulted from improper argument by plaintiffs' trial counsel.[16] We discuss these issues in turn.

1. *Alleged excessiveness of award.* The jury awarded to Hansen the following:

---

[16] Crown also contends that the allegedly excessive verdict was also caused by what it characterizes as the trial court's "improper instructions" to the jury. Crown does not explain, however, how the trial court's instructions on damages misstated the law. Accordingly, we will not consider further this aspect of Crown's argument. *W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 634, 460 N.W.2d 787, 792 (Ct. App. 1990) (an appellate court may decline to consider issue that is undeveloped in the briefs or that is not supported by citation to legal authority).

| | |
|---|---:|
| Pain, suffering, disability, and disfigurement to the date of trial .............. | $250,000 |
| Future pain, suffering, disability, and disfigurement ........................... | $750,000 |
| Future medical and hospital expenses | 59,122 |
| Loss of earning capacity to the date of trial ..................................... | 43,244 |
| Future loss of earning capacity ......... | 197,119 |

The jury awarded $450,000 to Hansen's wife for loss of consortium, and $200,000 to Hansen's daughter for loss of society and companionship.[17] The trial court reduced this latter amount to $100,000.

Other than reducing the award to Hansen's daughter, the trial court sustained the damage awards. Our scope of review is thus exceedingly narrow: we must sustain the awards if "there is any credible evidence that under any reasonable view supports" them. *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979). A damage award that has the trial court's approval may not be reversed unless "there is such a complete failure of proof that the verdict must be based on speculation." *Ibid.*

Crown argues that the award "exceed[ed] $2,000,000, a verdict range normally associated with quadriplegia or severe brain injury cases." The jury's award to Hansen for his past and future pain, suffering, disability, and disfigurement, however, was $1,000,000. Given the evidence that his leg bones were

---

[17] Hansen was also awarded past medical expenses that were fixed by the trial court at $101,102.66.

crushed into so many pieces that the emergency room physician testified that they could not be counted, that Hansen required nine surgeries, that he ultimately had to have his knee fused and re-fused, that he currently has implanted bone plates that extend from four inches above his knee to four inches below his knee, and that as a result of all this his left leg is two and one-half inches shorter than his right leg, it cannot be said that the award was, in the words of *Coryell*, "based on speculation." Further, Crown does not even argue how or why the jury's breakdown of the other, hard-figure awards to Hansen are not supported by the evidence, or how the remaining awards (as modified by the trial court) to Hansen's wife and daughter were not reasonable. Crown's undeveloped argument that the awards are excessive will not be considered further. *See W. H. Pugh Coal Co.*, 157 Wis. 2d at 634, 460 N.W.2d at 792 (appellate court may decline to consider issue that is not sufficiently developed).

2. *Alleged misconduct by Hansen's trial counsel.* Crown claims that Hansen's trial counsel made several improper arguments during his summation to the jury.

a. Crown contends that Hansen's trial lawyer made an improper argument when he asked the jury rhetorically: "Who speaks for the Mark Hansens of the world?" Crown did not, however, object at the time nor does the record reflect that it made a motion for a new trial on the basis of this statement before the jury returned its verdict. Any objection to the statement was, accordingly, waived. *See State v. Goodrum*, 152 Wis. 2d 540, 549, 449 N.W.2d 41, 46 (Ct. App. 1989) ("Failure to object at time of the alleged improprieties in the closing argument . . . waives review of that

697

alleged error. Additionally, a [party] must move for a mistrial to preserve the alleged error for appeal.") (citations omitted).

 b. Crown asserts that Hansen's trial lawyer made an improper argument about the alleged reluctance of some manufacturers to make their products safe:

> I don't know if any of you remember when forklifts did not have overhead protection. People were conked on the head, broken neck [*sic*], brains knocked out.
> You can see one of their pictures. The old time truck. That's the way it used to be, and those manufacturers wanted it that way. You don't think they came forward and said, hey, let's start making protective guards.
> They had to be dragged kicking and screaming
> —

Crown objected, and protested to the trial court: "This is a punitive damages argument about other manufacturers. Crown has never done any of these things." The trial court responded "I agree," and Hansen's counsel continued without interruption as follows: "Let's talk about the stand-up truck then. . . ." Crown later made a motion for a mistrial, which was denied. Whatever improper import Hansen's argument about what other manufacturers might have done in the past, however, was effectively cured by trial court's agreement with Crown's objection.

 c. Crown also objected when Hansen's trial counsel asked the jury to consider why Crown had not produced for trial the persons who designed the forklift truck:

[Hansen's trial counsel]: You know — Come on. Here is [*sic*] the designers of this truck. Wouldn't you want to hear from them? Where are they? They are back in New Bremen. One guy is on vacation.

So I ask you to evaluate Crown Company as to how sincerely can they really want you to be educated to make your decisions if they are afraid to bring in the very people who designed this truck.

[Crown's trial counsel]: Your Honor, I think it's improper — This is the missing witness instruction. He's got the depositions. He could have read anything he wants.

[The trial court]: It is. I don't disagree.

[Hansen's trial counsel]: Well, they are not here. . . . You ought to think about this and the verdict. It's going to go a long way in telling the people who make these trucks how they are supposed to conduct themselves in the future.

[Crown's trial counsel]: Your Honor, this is improper.

[The trial court]: I agree. I agree.

A trial's search for the truth is predicated on a jury's ability to assess the credibility of the various witnesses. Thus, the rules of evidence favor in-court testimony. *See* Rule 908.02, Stats. (hearsay generally not admissible); *United States v. Inadi*, 475 U.S. 387, 394-395 (1986). The official Federal Advisory Committee's Note accompanying the Federal Rules of Evidence explains why:

> The factors to be considered in evaluating the testimony of a witness are perception, memory, and narration. Sometimes a fourth is added, sincerity,

but in fact it seems merely to be an aspect of the three already mentioned.

In order to encourage the witness to do his best with respect to each of these factors, and to expose any inaccuracies which may enter in, the Anglo-American tradition has evolved three conditions under which witnesses will ideally be required to testify: (1) under oath, (2) in the personal presence of the trier of fact, (3) subject to cross examination.

Federal Advisory Committee's Note to Article VIII of the Federal Rules of Evidence, reprinted at 59 Wis. 2d R221-222 (citations omitted). *See also* 4 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE, ¶ 800[01] at 800-10 to 800-13 (1993). Although the trial court agreed with Crown's objection, we conclude that Hansen's trial counsel was well within the ambit of proper argument when he asked the jury to ponder why the designers were not brought in as live witnesses so the jury could assess their credibility by personal observation, even though a "missing witness" instruction might not have been appropriate. *See Ballard v. Lumbermans Mut. Cas. Co.*, 33 Wis. 2d 601, 616, 148 N.W.2d 65, 73-74 (1967) (failure by trial court to give a "missing witness" instruction did not prejudice party when it was permitted to argue issue to jury); *see also Feldstein v. Harrington*, 4 Wis. 2d 380, 388-390, 90 N.W.2d 566, 571-572 (1958) (proper for party to argue "missing witness" issue when opposing party does not call "a material witness within his control").

d. Crown's most serious charge against Hansen's trial counsel was that he made a "golden rule" argument, which has been long-condemned. *See Rodriguez v. Slattery*, 54 Wis. 2d 165, 170, 194 N.W.2d 817, 819 (1972) (reproving attorney's request to jurors that they

consider "[i]f it was your seven-year old" in assessing appropriate damages). The following is the statement by the Hansen's lawyer, and the resulting colloquy:

> Now, let's talk about those things. There is no one in the world, certainly no one in this jury, who has not suffered something that was pretty bad or had someone close to them suffer.
>
> [The trial court]: It's not proper to put the jurors in the same position as the plaintiff.
>
> [Hansen's trial counsel]: I wasn't doing that, Your Honor. I don't intend to. I'm not asking you to judge this on your own feelings. You must judge this on the evidence that pertains to them.
>
> I'm only saying everyone suffers bad things, and in some respect [*sic*] Mr. Hansen is glad to be alive.

The trial court was swift and, in our view, effective in its *sua sponte* correction of counsel, who, in our opinion, had not yet reached the point of improper comment. Reversal on this ground is not warranted.

e. Crown also argues that plaintiffs' trial counsel again ventured into the forbidden "golden rule" area later in his argument when, in discussing the damages to be awarded to Hansen's daughter, he said:

> And when we are injured and when our lives are changed, so are the lives of the people around us. And the judge will give you instructions about how her life and her interests are at stake here too and she must be considered in your award.

Crown did not contemporaneously object to this statement. Any objection to the statement was, accordingly,

701

waived. *See Goodrum*, 152 Wis. 2d at 549, 449 N.W.2d at 46.

 f. Finally, Crown's brief on appeal charges that:

[P]laintiffs' counsel deliberately misled the jury as to why [those responsible for the dockboard] were not at trial. Crown made numerous requests during trial for permission to tell the jury that these defendants had settled, which requests were denied. Plaintiffs' counsel then told the jury in closing:

[Plaintiffs' attorney] "And let me point out that since the issue here was not who caused the accident those people did not appear . . . in this trial."

(Ellipses in Crown's brief.) The transcript, however, reports the statement of plaintiffs' counsel as follows:

And let me point out that since the issue here was not who caused the accident those people did not appear *importantly* in this trial.

(Emphasis added.) The word "importantly," omitted from the quotation in Crown's brief, significantly changes the meaning of the sentence. Although during the course of the hearing on post-trial motions, Crown indicated that it did not believe the word was actually said, the court reporter's transcript is the official record in this case. *See* SCR 61.09; 71.03; and sec. 889.11, Stats. Crown's remedy was in a motion to correct the record, not ellipses. The statement, as recorded in the

702

record, was accurate—everyone conceded that Crown did not cause the accident. The major emphasis by both parties at trial was on whether Crown was negligent, whether the forklift truck it manufactured was unreasonably dangerously defective, and whether that negligence or defect was a cause of Hansen's leg injuries. As the trial court pointed out during the hearing on post-verdict motions, Crown's trial strategy did not focus on those responsible for the dockboard. *See supra* note 6. Crown's claim of error or prejudice is without merit.

*By the Court.*—Judgment affirmed.