STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas L. SEELEY, Defendant-Appellant.†

Court of Appeals

*No. 96–1939–CR. Submitted on briefs January 16, 1997.—Decided June 5, 1997.*

(Also reported in 567 N.W.2d 897.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert T. Ruth* of *Law Office of Robert T. Ruth* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. Thomas Seeley appeals his conviction for first-degree intentional homicide, the resulting sentence, and an order denying his postcon-

viction motions. He claims that: (1) the prosecutor committed plain error by arguing that Seeley's presence at trial during the testimony of the State's witnesses gave him the opportunity to tailor his trial testimony and made him a less credible witness; and (2) he was denied due process and equal protection of the law when the trial court failed to give him any sentence credit for the year he spent in jail pending trial. However, we conclude that Seeley waived any objection to the closing argument, and that the trial court was not required to credit, day for day, Seeley's presentence incarceration when setting his parole eligibility date under § 973.014(1)(b), STATS.[1] Accordingly, the judgment of the trial court is affirmed.

## BACKGROUND

On April 25, 1994, the State charged Seeley with one count of first-degree intentional homicide, contrary to § 940.01(1), STATS., enhanced under §§ 939.63 and 939.62(1)(a), STATS., for the use of a dangerous weapon and habitual criminality, based on the stabbing death of Gilbert Froeber. Seeley was unable to post the $100,000 required for bail, and remained in custody throughout the proceedings.

At trial, the State called James Draeving to testify about the sequence of events the evening Froeber was killed. Draeving stated that he met Seeley and Froeber at a bar in Beloit shortly after midnight, and that the three left together in order to buy liquor and cigarettes. The men then drove to another bar, where they stayed until nearly 2:00 a.m. Draeving, Froeber and Seeley left the second bar in Draeving's car. Draeving drove;

---

[1] This paragraph was formerly located in subsection (2) of § 973.014, STATS., but was renumbered by 1993 Act 289.

Seeley sat in the front passenger seat; and Froeber sat in the back on the right hand side. When Seeley and Froeber began to argue and hit one another, Draeving pulled over and told them to get out of the car if they wanted to fight. Seeley promptly exited the vehicle, pulled Froeber out and hit him a few times, then Seeley got back in the car. Draeving began slowly driving while Froeber walked along on the sidewalk parallel to the car, carrying a stick and exchanging threats and vulgarities with Seeley. Seeley then asked Draeving whether he still had a knife in the car, retrieved the knife from under the driver's seat, got out of the car and fatally stabbed Froeber. Other witnesses corroborated much of Draeving's account, testifying that two men were fighting and wrestling on the ground and that one of the men got back into the car, while the other walked alongside the car. One witness testified that later, the passenger got out of the car again and approached the walking man, and that soon after the witness heard the thud caused by Froeber's head hitting the pavement.

Seeley took the stand and testified that after he fought with Froeber outside the car, he started walking back towards the car, and Froeber followed him with a club or pipelike object. According to Seeley, Draeving yelled "Watch out" and handed him the knife. Seeley spun around with the knife and stabbed Froeber, though he said he "didn't have no thought or nothing." Seeley said he got into the car, and Draeving asked him whether he had stabbed Froeber. Seeley said he only got out of the car the second time to see if Froeber was all right. Thus, by Seeley's account, Froeber strolled alongside the car some 400 feet after being stabbed in the heart. However, in earlier statements to police, Seeley denied being on the street on the night in question or getting into a fight with anyone.

In his closing argument, the prosecutor brought out numerous inconsistencies between Seeley's original story to police and his testimony at trial. In addition, he stated:

> We also know, ladies and gentlemen, that the defendant in this case changed his testimony to fit the facts that he heard from the witness stand. . . .
>
> The defendant [used] the same "slow trot" words that Mr. Hemmerling used, because he, of course, gets to sit there and listen to all the evidence and he gets to make the decision whether he testifies or not, he gets to make the decision whether the focus is going to be on his actions or on James Draeving . . . .
>
> . . . Do you really think that he wasn't there? Or is really what happened, ladies and gentlemen, he sat here through the course of the trial, listened to the testimony . . . and decided to admit that "Yeah I had the knife but I'm too drunk."

Seeley did not object when any of those statements were made. However, after the jury convicted Seeley, and the trial court sentenced him under § 973.014(1)(b), STATS., to life in prison with parole eligibility in the year 2040, Seeley moved for a new trial based on prosecutorial misconduct. He also moved to be given 431 days of sentence credit for the time he spent in jail prior to sentencing. The trial court denied both of Seeley's postconviction motions, ruling that the prosecutor's statements had not "infected the proceedings with unfairness," and that the court was not required to give presentence credit when sentencing under § 973.014(1)(b).

## DISCUSSION

**Standard of Review.**

The trial court has discretion to determine whether counsel's remarks during closing argument are appropriate. *State v. Bjerkaas,* 163 Wis. 2d 949, 963, 472 N.W.2d 615, 620 (Ct. App. 1991). However, when no objection is made to an alleged error, the trial court has no opportunity to exercise its discretion, and the error is deemed waived. *State v. Fawcett,* 145 Wis. 2d 244, 256, 426 N.W.2d 91, 96 (Ct. App. 1988). Therefore, generally, a defendant is not entitled to any review of the prosecutor's statements unless a timely objection is made.[2] *See State v. Kircher,* 189 Wis. 2d 392, 404, 525 N.W.2d 788, 793 (Ct. App. 1994). Nevertheless, this court may independently consider alleged constitutional errors not raised in a timely fashion in the trial court, if there are no unresolved factual issues, and it is in the interest of justice to do so. *State v. Marshall,* 113 Wis. 2d 643, 653, 335 N.W.2d 612, 617 (1983); *State v. Johnson,* 60 Wis. 2d 334, 343, 210 N.W.2d 735, 740 (1973).

We will consider *de novo* whether a defendant is entitled to sentence credit under Wisconsin's statutory scheme. *State v. Rohl,* 160 Wis. 2d 325, 329, 466 N.W.2d 208, 210 (Ct. App. 1991). And contentions that the protections of due process and equal protection

---

[2] Seeley argues that the statements should be reviewed under the "plain error" standard. However, as the trial court correctly noted, the plain error doctrine applies only to evidentiary errors. *State v. Damon,* 140 Wis. 2d 297, 303, 409 N.W.2d 444, 447 (Ct. App. 1987).

have been transgressed will also be reviewed *de novo.* *See State v. Garcia,* 192 Wis. 2d 845, 864–65, 532 N.W.2d 111, 118 (1994).

**New Trial.**

In his reply brief, Seeley concedes that if the plain error rule does not apply, he is unable to satisfy the standards for discretionary reversal by this court under § 752.35, STATS.[3] Nonetheless, a broad reading of his arguments on appeal could be taken as a contention that this court should examine the constitutional issue because the prosecutor's remarks left Seeley with only two options: to forgo his right to be present during trial and then to testify, or to face the prosecutor's accusation of incredibility resulting from his opportunity to hear the State's case. Seeley's theory leaves out a third option available to him: namely, to testify in a manner consistent with his previous statements, rather than modifying his story at trial.

In any event, we conclude that the interest of justice does not require further examination of the prosecutor's remarks. The three statements complained of were a small part of a fifty-minute closing argument, which focused largely on the incredibility of Seeley's story. In addition, the evidence of Seeley's guilt was overwhelming, as evidenced by the fact that the jury took only half an hour to convict him after a five-day trial. Therefore, we decline to excuse Seeley's

---

[3] Under § 752.35, STATS., this court may reverse when the real controversy was not tried, or when it is probable that justice has miscarried and a different result would be obtained upon retrial.

waiver. The trial court properly denied Seeley's motion for a new trial.

## Presentence Credit.

Wisconsin's statutory scheme divides the responsibility for determining the actual time a convicted felon will be incarcerated between the judicial and executive branches[4] of government. Section 304.06(1)(b), STATS., states in part:

> Except as provided in . . . s. 973.014, the parole commission may parole an inmate serving a life term when he or she has served 20 years, as modified by [other statutory parole formulas]. The person serving the life term shall be given credit for time served prior to sentencing under s. 973.155, including good time under s. 973.155(4).

Section 973.014(1)(b), STATS., in turn, gives a trial court discretion to set a parole date later than that which would be determined by the statutory formula when sentencing a person to life imprisonment. It states:

> (b) The person is eligible for parole on a date set by the court. Under this paragraph, the court may set any later date than that provided in s. 304.06(1), but may not set a date that occurs before the earliest possible parole eligibility date as calculated under s. 304.06(1).

In *State v. Chapman*, 175 Wis. 2d 231, 235–36, 499 N.W.2d 222, 223 (Ct. App. 1993), this court held that neither the Wisconsin statutes nor the Equal Protec-

---

[4] The constitutionality of this scheme, in terms of separation of powers, was approved by the Wisconsin Supreme Court in *State v. Borrell*, 167 Wis. 2d 749, 482 N.W.2d 883 (1992).

tion Clause of the constitution required a trial court to give presentence confinement credit to a felon sentenced to life imprisonment, when the trial court sets the parole eligibility date under § 973.014(1)(b), STATS.

Seeley argues *Chapman* should not be applied here. First, he contends that *Chapman* was wrongly decided. However, a decision by the court of appeals is binding and must be followed as precedent by all other intermediate courts, even if wrongly decided. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997). Therefore, we reject Seeley's invitation to overrule *Chapman*.

Seeley next attempts to distinguish *Chapman* on several grounds. He claims that *Chapman* failed to consider § 304.06(1)(b), STATS., and that we did not examine the proper equal protection classifications. He also notes that the trial court in *Chapman* at least took the defendant's presentence incarceration into consideration when setting the parole date. Here, the trial court specifically chose not to give credit for incarceration prior to trial. We are unpersuaded. *Chapman* did not overlook § 304.06. Rather, we noted that:

> A defendant sentenced under sec. 973.014(1), Stats., is eligible for parole according to a formula the legislature sets forth in sec. 304.06, Stats. This formula is used to calculate the discretionary parole eligibility date and takes into consideration any presentence confinement credit. On the other hand, a defendant sentenced under sec. 973.014(2)[5] has his or her parole eligibility date established by the sentencing court and not by the formula in sec. 304.06.

[5] As noted earlier, § 973.014(2), STATS., has been renumbered to § 973.014(1)(b), STATS.

*Chapman*, 175 Wis. 2d at 245 n.1, 499 N.W.2d at 228 n.1.

In regard to Seeley's equal protection argument, it is true that *Chapman* analyzed the equal protection challenge to § 973.014, STATS., by comparing those who had been convicted of a crime that carried a sentence of mandatory life imprisonment with those convicted of a crime punishable by a lesser sentence, and that this case presents the comparison of two actors, both convicted of first-degree intentional homicide, the first of whom, due to indigency, remained incarcerated prior to trial, while the second, who could afford bail, was not incarcerated prior to trial. Seeley argues we did not decide whether credit must be given when presentence incarceration was based on indigency.

In *Chapman* we stated:

> Relying upon *Klimas v. State*, 75 Wis. 2d 244, 248–50, 249 N.W.2d 285, 287–88 (1977), and *State v. Walker*, 117 Wis. 2d 579, 586, 345 N.W.2d 413, 416 (1984), Chapman argues that as an indigent defendant he has a constitutional right to have his presentence confinement credited against his parole eligibility date.
>
> Chapman's argument would have merit if the option of sec. 973.014(2), Stats., permitting the trial court to set a parole eligibility date without consideration of presentence confinement credit treated indigent and nonindigent defendants differently. The statute's classification is based on the nature of the crime and the characteristics of the defendant and not on financial considerations. In denying consideration of credit for presentence confinement to a class of convicted defendants the legislature has not denied them a right to such credit.

*Chapman*, 175 Wis. 2d at 246–47, 499 N.W.2d at 228. However, because we also noted at footnote 2 that the

record failed to show that Chapman remained in jail prior to trial due to indigency, our decision could be interpreted as Seeley does, *i.e.*, that we did not decide the presentence credit issue in regard to the effect of § 973.014(1)(b), STATS., on indigent defendants. *Id.* at 247, 499 N.W.2d at 228. Therefore, we specifically address that issue now.

We first note that a comparison similar to that presented by Seeley was made in *Klimas v. State*, 75 Wis. 2d 244, 249 N.W.2d 285 (1977). There the supreme court concluded that where custody is the result of indigency, credit must be given for presentence confinement, as a constitutional matter. *Id.* at 251, 249 N.W.2d at 289. However, in *Klimas* the supreme court did not address an equal protection claim in the individualized parole eligibility context. Rather, in *Klimas*, the supreme court suggested to the legislature that a general sentence crediting statute be enacted, in line with 18 U.S.C. § 3568,[6] as an aid to more uniform sentencing. *Klimas*, 75 Wis. 2d at 251, 249 N.W.2d at 289. The legislature responded by modifying § 53.11, STATS., which has since been further amended and renumbered to § 304.06, STATS. *See* 1989 Wis. Act 31, § 1629. Subsection (1)(b) of § 304.06 now specifically exempts life sentences imposed under § 973.014(1)(b), STATS., from the statutory crediting requirement. This statutory scheme was enacted with full knowledge of *Klimas* and was approved by the supreme court as a method of individualizing the parole eligibility date consistent with the circumstances of the case and the characteristics of the individual defendant. *State v. Borrell*, 167 Wis. 2d 749, 766 n.6, 482 N.W.2d 883, 889 (1992).

---

[6] This federal provision was repealed by the Sentencing Reform Act of 1984. 18 U.S.C. § 355, note, as amended.

 Given the individualized nature of the parole determination under §§ 304.06(1)(b) and 973.014(1)(b), STATS., we turn to an analysis of whether the trial court's use of § 973.014(1)(b) denied this indigent defendant the equal protection of the law. A challenge to the difference in treatment of criminal defendants in applying presentence credit is subject to the rational basis test. *Chapman,* 175 Wis. 2d at 245, 499 N.W.2d at 227. This means that the challenger must show beyond a reasonable doubt that the different treatment he was afforded was arbitrary or irrational.

 When a court chooses to sentence a defendant under § 973.014(1)(b), STATS., and thereby elects to establish a specific parole eligibility date, that choice is an "integral part of the court's sentencing decision." *Borrell,* 176 Wis. 2d at 767, 482 N.W.2d at 889. It is based on the factors that are relevant to the gravity of the offense *(e.g.,* the vicious, wanton or aggravated nature of the criminal act), the individual characteristics of the defendant *(e.g.,* the defendant's remorse or lack thereof, his personality, character and social traits), and the need to protect the public *(e.g.,* the defendant's need for rehabilitative control). The weight to be given to the factors utilized in an individualized parole determination lies within the discretion of the trial court. *See State v. Holloway,* 202 Wis. 2d 695, 701, 551 N.W.2d 841, 844 (Ct. App. 1996).

Thus, in an appropriate exercise of the trial court's discretion, it may, or it may not, give actual credit for presentence incarceration. And, "giving credit" does not always require a mathematical reduction of the sentence on the record, as a day for day equilibration with the presentence incarceration. *State v. Walker,*

117 Wis. 2d 579, 584, 345 N.W.2d 413, 416 (1984). That choice is but part of the exercise of the trial court's discretion necessary to the individualization of the parole eligibility date under the statutory scheme.

Here, the trial court carefully identified all of the individual characteristics of the homicide Seeley committed, as well as Seeley's lack of remorse, his past history of violent criminal conduct, and the extensive services which had been made available to him since he was a juvenile, and it concluded that the public's need for protection and Seeley's need for a very structured environment which could control his conduct warranted setting January 21, 2040 as the earliest date on which he could be paroled. The trial court specifically stated that there would be no credit for Seeley's presentence incarceration. This indicates that the court considered the presentence incarceration, but in its individualized treatment of Seeley, it chose not to shorten the length of time to be served before Seeley would first be eligible for parole.

In making its individualized parole eligibility determination, the trial court treated Seeley differently not only from financially solvent defendants who could post bail, but also from every other criminal defendant in the system. Seeley's status as an indigent was not a consideration. Therefore, we conclude the individualized sentence imposed by the trial court did not violate Seeley's right to equal protection, but rather fulfilled the legitimate statutory objective of § 971.014(1)(b), STATS., in a rational manner.[7]

---

[7] Although Seeley claims a denial of due process as well, he does not support his claim with legal argument. Therefore, we do not address it in this opinion. *State v. Pettit*, 171 Wis. 2d 627, 647, 429 N.W.2d 633, 642 (Ct. App. 1992).

## CONCLUSION

Seeley waived any objection to closing argument by failing to make timely objections, and the trial court's exercise of its discretion in choosing to individualize Seeley's earliest possible date for parole under § 973.014(1)(b), STATS., was accomplished in a manner which did not violate Seeley's right to equal protection under the law. Therefore, Seeley's conviction is affirmed and his postconviction motions were properly denied.

*By the Court.*—Judgment and order affirmed.