STATE of Wisconsin, Plaintiff-Respondent,

v.

Ludwig GUZMAN, Defendant-Appellant.†

Court of Appeals

*No. 99–2249–CR. Oral argument October 30, 2000.—Decided January 17, 2001.*

2001 WI App 54

(Also reported in 624 N.W.2d 717.)

†Petition to review denied.

310

313

On behalf of the defendant-appellant, the cause was submitted on the brief of *Robert E. Haney* of *Podell, Ugent, Haney & Miszewski, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Jeffrey J. Kassel*, assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Ludwig Guzman appeals from a judgment entered after a jury convicted him of one count of endangering safety by use of a dangerous weapon as party to a crime, and one count of criminal gang member solicitation while armed as party to a crime. Guzman raises four issues: (1) whether the trial court erred when it ruled that the State was not collaterally estopped from prosecuting Guzman on the gang solicitation charge; (2) whether the trial court erroneously exercised its discretion

314

when it refused to discharge two jurors for cause; (3) whether the trial court erroneously exercised its discretion when it excluded a defense witness; and (4) whether the trial court erred when it denied Guzman's motion for a mistrial based on prosecutorial misconduct. Because the State was collaterally estopped from prosecuting Guzman with the "while armed" penalty enhancer on the gang solicitation charge, we reverse and remand for resentencing. Because the trial court did not erroneously exercise its discretion with respect to jury selection, excluding a defense witness, or denying the motion for a mistrial, we affirm on those issues.

## I. BACKGROUND

¶ 2. On November 25, 1997, Guzman was charged with endangering safety by use of a dangerous weapon as party to a crime. By information dated December 16, 1997, the State added a second count of felon in possession of a firearm. The case was tried to a jury in May 1998. The jury was unable to reach a verdict on the first count, but found Guzman not guilty on the second count. The trial court declared a mistrial on the first count.

¶ 3. On June 6, 1998, the State filed an amended information charging Guzman with endangering safety by use of a dangerous weapon as party to a crime, and with criminal gang member solicitation while armed as party to a crime. Guzman moved to strike the information on grounds of double jeopardy and collateral estoppel. The trial court denied the motion. The second jury trial occurred in September 1998. He was found guilty on both counts. Guzman filed post-verdict motions seeking a mistrial, which were denied. Guzman now appeals.

## II. DISCUSSION

### A. *Collateral Estoppel*

¶ 4. Guzman first claims that the gang solicitation charge was duplicitous to the felon in possession charge, of which he was acquitted in the first jury trial. He argues that the first jury found he did not actually possess a firearm, and that the gang solicitation charge was based on possession of a firearm. As a result, he contends that the acquittal on the felon in possession charge operates to estop prosecution on the gang solicitation charge, while armed. We agree that the State improperly presented evidence on the *while armed* penalty enhancer of the gang solicitation charge because the first jury had already decided that Guzman did not possess a firearm on the date and time involved.

¶ 5. During the first trial, the State argued that Guzman provided the firearm to his co-conspirator during a meeting at Guzman's house on November 24, 1997. As noted, the charge in the first trial was felon in possession of a firearm. Guzman stipulated that he was a felon. Thus, the only issue for the jury on this charge in the first trial was whether Guzman was in possession of a firearm. The jury found him not guilty on this charge; that is, he did not possess a firearm.

¶ 6. In the second trial, the State argued again that Guzman possessed a firearm on November 24, 1997, at his house during a meeting with his co-conspirators. This evidence was used to support the charge of gang solicitation, *while armed*. We agree with Guzman that the State was collaterally estopped from using this evidence to support the *while armed* penalty enhancer of the gang solicitation charge because the

316

first jury found Guzman not guilty of possession of a firearm.

■

¶ 7. "Under the collateral estoppel doctrine an issue of ultimate fact that is determined by a valid and full judgment cannot again be litigated between the same parties in a subsequent lawsuit." *State v. Vassos*, 218 Wis. 2d 330, 343, 579 N.W.2d 35 (1998). The issue of ultimate fact presented in both trials was whether Guzman handed the gun over to a co-conspirator during a meeting at Guzman's house on November 24, 1997. The jury in the first trial concluded that Guzman was not in possession of a gun at that time. Therefore, the State was estopped from arguing during the second trial that Guzman was in possession of a gun at that time. The first jury had already decided this issue of ultimate fact in Guzman's favor.

■

¶ 8. Our conclusion, however, does not affect the conviction on the substantive charge of criminal gang member solicitation because there is other evidence in the record sufficient to sustain the jury's conviction on that charge. *See State v. Peete*, 185 Wis. 2d 4, 23, 517 N.W.2d 149 (1994). Based on our conclusion, however, Guzman is entitled to a resentencing on the criminal gang member solicitation conviction, without consideration of the penalty enhancer for use of a dangerous weapon. *See State v. Avila*, 192 Wis. 2d 870, 893, 532 N.W.2d 423 (1995). Accordingly, we reverse that portion of the judgment and remand for resentencing with directions to the trial court to resentence Guzman on the gang solicitation charge without the *while armed* penalty enhancer.

## B. Jury Selection

¶ 9. Guzman's next claim is that the trial court erroneously exercised its discretion when it refused to strike two jurors for cause. The first juror, Michael Ferch, told the trial court that he had a medical condition which made it hard for him to sit, and the condition, combined with the medication he was taking, would prevent him from paying attention. Guzman requested that Juror Ferch be struck for cause. The trial court denied the motion, ruling that Juror Ferch "might find it uncomfortable. But he has been able to sit through the proceedings up until now." The second juror, Bob Schmidt, advised that he would not be able to be impartial because he was self-employed, and every moment that he was away from his business created a financial hardship. Guzman moved to strike Juror Schmidt for cause. The trial court denied the motion, ruling: "I'm sure it's an economic hardship, but no more so than it is on a lot of other people. Mr. Schmidt has a duty. I'm not going to excuse him based on the reasons that I heard." Guzman used a peremptory strike to excuse Juror Schmidt from the panel. Juror Ferch was not struck and served on the panel. Guzman argued that Juror Ferch's medical condition made him physically unfit to properly discharge the duties of a qualified juror and that Juror Schmidt was biased. Consequently, he contends both should have been struck for cause.

¶ 10. A defendant's right to receive a fair trial by a panel of impartial jurors is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Art. I, § 7 of the Wisconsin Constitution, as well as principles of due process. *State v.*

*Faucher*, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999). "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial." *Id.* The requirement that a prospective juror must be indifferent is codified in WIS. STAT. § 805.08(1). *Id.* The statute directs that "[i]f a juror is not indifferent in the case, the juror shall be excused." *Id.* Jurors are presumed impartial, and the challenger to that presumption bears the burden of proving bias. *State v. Louis*, 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990).

¶ 11. Whether a prospective juror is biased and should be removed from the jury panel for cause is left to the trial court's discretion. *See State v. Ferron*, 219 Wis. 2d 481, 491–92, 579 N.W.2d 654 (1998). We will overturn the trial court's decision only where the prospective juror's bias is "manifest." *Id.* at 496–97. If the circuit court errs in failing to dismiss a challenged juror for cause and, as a result, the defendant uses a peremptory strike to remove that juror, the defendant is entitled to a reversal and a new trial. *See State v. Ramos*, 211 Wis. 2d 12, 24–25, 564 N.W.2d 328 (1997).

¶ 12. The supreme court recently categorized and defined the three types of juror bias: subjective, objective and statutory. *See Faucher*, 227 Wis. 2d at 716. "Subjective bias" refers to the prospective juror's state of mind and is "bias that is revealed through the words and the demeanor of the prospective juror." *Id.* at 717. A trial court's factual finding that a prospective juror is or is not subjectively biased will be upheld unless it is clearly erroneous. *See id.* at 718. "Objective bias" is determined through the facts and circumstances of the juror's responses despite the fact that the

juror states that he or she can be impartial. *See State v. Kiernan*, 227 Wis. 2d 736, 745, 596 N.W.2d 760 (1999). Objective bias exists when a reasonable person in the juror's position would not be able to set aside a personal opinion or prior knowledge. *See id.* "Statutory bias" exists if the prospective juror falls into one to the categories listed in WIS. STAT. § 805.08.

¶ 13. Guzman does not address the three types of statutory bias; instead, he argues generally that the two jurors could not serve impartially. We conclude statutory bias is inapplicable to this case. With respect to Juror Schmidt, the question is whether he was subjectively or objectively biased. With respect to Juror Ferch, however, the issue is whether his physical infirmity prevented him from sitting as a juror on this case.

¶ 14. Juror Ferch indicated he did not want to serve on the jury because he was physically unable to do so. He had a bad back, and took medication, which made it difficult for him to sit and pay attention for long periods of time. Here, the trial court found that Juror Ferch's physical condition did not prevent him from serving as a juror. We cannot conclude that this finding was clearly erroneous. The trial court had the opportunity to observe the demeanor and assess the credibility of this witness first-hand. The trial court was better able to determine whether Juror Ferch's condition would interfere with his ability to discharge his duties as a juror. After hearing Juror Ferch's explanation, and personally observing Ferch, the trial court ruled:

> Jury service is a duty, and I don't think one can get off the duty simply by saying I am not going to pay attention. It's their duty to pay attention.
>
> . . . .

I think that he might find it uncomfortable. But he has been able to sit through the proceedings up until now.

. . . .

[H]e seemed to be alert, and I think . . . [h]e has the capacity.

¶ 15. The transcript also reflects that Juror Ferch, despite his physical infirmity, was employed at Airborne Express where he admitted he was able to sit for three to four hours a day. During the *voir dire*, the trial court found that Juror Ferch appeared lucid, alert, aware of what was going on, and capable of discharging his duties. Based on the foregoing, the trial court found that Juror Ferch's physical limitation did not prevent him from serving as a juror. In fact, despite Juror Ferch's statements, he was able to, and did, serve as a juror. There is nothing in the record indicating that Juror Ferch made special requests for accommodations or that his condition interfered with the trial. Accordingly, we conclude that the trial court's finding that Juror Ferch was able to serve as a juror was not clearly erroneous. Therefore, the trial court's discretionary decision denying the motion to strike Juror Ferch for cause does not constitute reversible error.

¶ 16. We now turn to the second juror challenge. Juror Schmidt expressed that he would not be able to be impartial because he was self-employed, which made being a juror a hardship. Does his attitude make Juror Schmidt either subjectively or objectively biased? We conclude that it does not. Many jurors are working individuals, taken away from their regular place of employment. Although many of these jurors would rather be at their regular place of employment, this

does not render them unable to serve as fair and impartial jurors. As the trial court pointed out:

> As far as jury selection is concerned, it just seems to me that there is a difference between juror bias and juror convenience. I don't think there is anything to show that either of these jurors was in any way biased. They may not have found it convenient, but jury service is an obligation, and sometimes I think that a judge in performing his obligations, or her obligations, has to insist that obligation be met.
>
> . . . I think when we conduct that voir dire examination, in effect the Judge is in the position of being the trier of fact and has to assess the credibility of jurors where they say well it won't be convenient, Judge. I assessed that credibility and based upon that I felt that these jurors were able to serve and therefore I did not strike them for cause.

██

¶ 17. Here, Juror Schmidt admitted that he did not want to serve, that he was self-employed, and his income would suffer if he was forced to serve. He said that he thought this would affect his ability to be fair. The trial court disagreed. Again, the trial court was in a superior position to assess credibility and demeanor of this juror. It determined that Juror Schmidt would be able to set aside any negative feelings he felt as a result of having to serve as a juror, and that he would be able to judge the case based on the evidence. As a part of this analysis, the trial court reasoned that this was not a two or three week trial. Rather, the trial was expected to last two or three days. The trial court's finding is not clearly erroneous. It is not uncommon for prospective jurors to be annoyed at being summoned for jury service. After all, this civic duty disturbs the

regular routine, takes them away from other important employment, and may even impact their pocketbooks. Nevertheless, jury service is an extremely important civic duty, and an integral part of our system of jurisprudence. Inconvenience and inability to work during regular working hours should not, and cannot, be transformed into bias sufficient to strike a juror for cause. Thus, we reject Guzman's claim that the trial court erroneously exercised its discretion when it refused to discharge Juror Schmidt.

## C. Exclusion of Witness

¶ 18. Guzman next argues that the trial court erroneously exercised its discretion when it excluded the testimony of defense witness, Juan Rosado. Guzman argues that Rosado should have been allowed to testify, despite lack of notice, because Rosado was not an alibi witness, but rather, was offering impeachment evidence. We disagree.

██

¶ 19. Evidentiary rulings on the admission and exclusion of evidence are reviewed subject to the erroneous exercise of discretion standard. *State v. Plymesser*, 172 Wis. 2d 583, 591, 493 N.W.2d 367 (1992). When there is a reasonable basis for the evidentiary ruling, we will not disturb it. *See id.*

¶ 20. During the second trial, Guzman provided the State with a witness list that, for the first time, identified Rosado. The trial court heard Rosado's testimony *in camera*. Among other things, Rosado testified that he had spoken with Guzman's counsel two weeks earlier and advised counsel that he had been with Guzman at Guzman's house on the date of the incident in this case. Rosado also indicated that he never saw Guzman with a gun on that date. The trial court excluded

Rosado from testifying because Guzman failed to timely name Rosado as a witness, and because Guzman had failed to provide notice under the alibi statute, WIS. STAT. § 971.23(8)(a).

¶ 21. Guzman contends that he did not need to file a notice under the alibi statute because Rosado was an impeachment, not an alibi, witness. The State responds that even if that is so, that was not the sole basis for the trial court's decision to exclude the testimony. The State argues that Rosado testified that he spoke with Guzman's counsel two weeks earlier, and that despite this, the State was not advised that Rosado might be called as a defense witness until the third day of trial. The trial court ruled that based on this untimely notice, Rosado's testimony would be excluded. Guzman offers no reply to this argument.

¶ 22. The record supports the trial court's discretionary decision to exclude Rosado's testimony. Guzman was aware of this witness from the date of the incident. Counsel spoke with Rosado at least two weeks before notice of his testimony was provided to the State. Under these circumstances, it was reasonable for the trial court to exclude Rosado's testimony based on the fact that he was not disclosed as a potential witness until the third day of the second trial. "Wisconsin has abandoned the concept of 'trial by ambush' where neither side of the lawsuit knows until the actual day of trial what the other side will reveal in the way of witnesses or facts." *Carlson Heating, Inc. v. Onchuck*, 104 Wis. 2d 175, 180, 311 N.W.2d 673 (Ct. App. 1981). The purpose of the rule is to avoid unfair surprise. A party who fails to timely disclose witnesses risks the consequence imposed here?exclusion of that witness's testimony.

¶ 23. In addition, the trial court did not summarily exclude Rosado's testimony. The trial court took the time to hear the testimony *in camera* before making its decision. Based on the substance of the testimony, the trial court also ruled that it constituted alibi testimony; therefore, it could not be properly offered because Guzman failed to comply with the notice requirements of the alibi statute. We agree with the trial court that Rosado's statements that Guzman was with him the entire day of the incident and that they never left the house, "walks, talks, smells, and looks like an alibi."

## D. *Prosecutorial Misconduct*

¶ 24. Guzman contends that the prosecutor invaded the province of the jury when he referred to a penalty enhancer three times during closing argument. Guzman argues that the jury is not supposed to be advised regarding sentencing issues, because the issue of guilt is independent of punishment. *See State v. Garnett*, 243 Wis. 615, 617, 11 N.W.2d 166 (1943). We reject Guzman's claim because he failed to raise a timely objection.

¶ 25. The comments that Guzman challenges on appeal occurred during the prosecutor's closing argument to the jury. Guzman did not object during the closing. Instead, he gave the defense closing to the jury, and allowed the prosecutor to give rebuttal closing. Only then did Guzman object to the prosecutor's comments and move for a mistrial. In order to preserve this objection, Guzman was obligated to make a contemporaneous objection and move for a mistrial. *See State v. Goodrum*, 152 Wis. 2d 540, 549, 449 N.W.2d 41 (Ct. App. 1989). The purpose of the contemporaneous objec-

tion is to allow the trial court to correct any alleged error with minimal disruption. *See State v. Boshcka,* 178 Wis. 2d 628, 643, 496 N.W.2d 627 (Ct. App. 1992). A timely objection would have afforded the trial court the opportunity to correct any potential error. *See State v. Seeley,* 212 Wis. 2d 75, 81, 567 N.W.2d 897 (Ct. App. 1997). Therefore, when a timely objection is not made challenging the closing remarks of the prosecutor, a defendant waives his or her right to a review on that issue. *See id.* Guzman waived his right to challenge the prosecutor's remarks here by failing to object at the time the comments were made.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.