PER CURIAM.
¶ 1 Moche Lamar Greer appeals from a judgment of conviction, entered upon a jury's verdict, on one count of first-degree reckless homicide. Greer contends the trial court committed plain error when it allowed the State to comment, in closing argument, on Greer's failure to subpoena an alibi witness. We reject Greer's challenge and affirm the judgment.
¶ 2 According to the criminal complaint, Milwaukee police were dispatched to an injury motor vehicle accident in the early morning hours of August 22, 2015. The driver of one of the vehicles, Gabriel Valezquez, was pronounced dead at the scene. It was not the collision that killed him, but multiple gunshot wounds.
¶ 3 Also in the early morning hours of August 22, 2015, shortly before the traffic incident, Milwaukee police were dispatched to the Toolbox Tavern for a shots-fired call. According to witness Lanz Harwell, his friend-Valezquez-was drunk and got into an argument with "two black guys" outside the tavern. One had his shirt off, and Harwell said that this man "got to shooting and I heard glass breaking." Valezquez had taken off in his car and was driving in the direction of the people outside the tavern, but had turned away from the crowd by the time shots were fired. From photos, Harwell identified Andrew Sanders as having been with the shooter and identified Greer as the shooter. Sanders told police he went with his friend "Moe" (Greer) to the tavern. When they arrived, they approached a group of people outside. There was an argument. Sanders saw a car take off and try to hit Greer. Sanders stated he saw Greer shoot at the car three or four times.
¶ 4 Greer was charged with one count of first-degree reckless homicide. At trial, Harwell and Sanders both testified and identified Greer as the shooter. Harwell testified that his cousin, Damara Skenandore, had an argument with the shirtless man before the shooting. A detective testified he had shown Skenandore a photo array, but she was unable to provide any useful information about the shooter's identity. Skenandore did not testify. Greer testified in his own defense. He told the jury he was not at the tavern that night and that he was with Courtney Thomas at the time of the shooting. Thomas did not testify.
¶ 5 During her closing, defense counsel argued:
Whatever happens, it is seconds, it is obviously a fast encounter. [Harwell] at that point doesn't realize what's going to happen so he then goes about his time there. And he has, arguably, another opportunity to see the shooter when the shooter is into a controversy with his cousin; but remember, he describes this as a person who has had prior problems with his cousin, there's been other fights, other drama between them.
The cousin Damara, experience with seeing the shooter, knowing the shooter, where is the identification by Damara? We don't have an identification by Damara, we don't have Damara coming in and saying Moche Greer is the person-
The State interrupted with an objection. The trial court held a sidebar and ultimately overruled the State's objection.
¶ 6 Before the State's rebuttal, the trial court excused the jury so the parties could make legal arguments. After the jury was out, the trial court summarized the issue arising from the sidebar:
In essence, [the district attorney] started to argue that if [defense counsel] was allowed to argue or chose to argue on the absence of the State or the lack of the State calling a particular witness, he was of the perspective that that would open the door to allow the State then to comment in rebuttal about the defense not calling witness or witnesses, specifically referring to witnesses in support of the defense's alibi that he testified about.
My initial response was that I thought that that was impermissible burden shifting, that my initial impression was that the State bears the burden of proof.... That I thought it would be impermissible burden shifting for the State to comment on the defense not calling a witness[.]
¶ 7 Ultimately, relying on State v. Patino , 177 Wis. 2d 348, 381-82, 502 N.W.2d 601 (Ct. App. 1993), and United States v. Sblendorio , 830 F.2d 1382 (7th Cir. 1987), the trial court determined that the State was, in fact, permitted to comment on the defense's failure to call a witness. It explained that under its reading of Patino , which had taken language from Sblendorio , "it is permissible for the prosecutor to imply that the failure of the defendant to present available evidence in opposition to the government's witnesses supports an inference that the government's witnesses were reliable." The trial court also noted that, under the cases, "the jury is entitled to know that the defendant may compel people to testify; and so if the State wishes to comment on the process that is available to either party to compel the appearance of a witness in court, that being the subpoena process, they may do so."
¶ 8 Thus, in its rebuttal, the State argued:
There was one thing that was clear during this trial, you can force people to come to court and testify. It was plain Mr. Sanders didn't want to testify, it was plain Mr. Harwell didn't want to testify. There are subpoena powers, the State has them and the State had to give people immunity.
The defense has subpoena powers to force people to come to court. There is a witness named Courtney Thomas who didn't come to court. The inference can be drawn that her failure to come to court shows that Mr. Sanders and Mr. Harwell are telling the truth when they say that is Mr. Greer. It is the State's burden to prove, he doesn't have to prove he was somewhere else. But it is a reasonable inference that when you don't use powers to force somebody, the State believes they are telling the truth.
In other words, the State argued that because Greer had failed to call Thomas to support his alibi that he was not at the tavern, the jury should infer that Harwell and Sanders were being truthful when they identified Greer as the shooter.
¶ 9 The jury convicted Greer, and the trial court sentenced him to twenty-one years of initial confinement and ten years of extended supervision. Greer appeals.
¶ 10 The sole issue on appeal is whether "the [trial] court erred when it allowed the prosecutor to comment on the defense failure to subpoena witnesses and to argue the inference that the State's witnesses were telling the truth." Greer contends that such line of argument by the State "should be allowed only in those rare cases where a defense attorney has unequivocally opened the door" and that the trial court's decision "where it deemed the defense closing argument as opening the door for the [State] was error." In particular, Greer argues that he did not open the door because his closing argument referred only to Skenandore's failure to identify anyone in the photo array, not to the State's failure to subpoena her as a trial witness.
¶ 11 The State first counters that any claim of error in its closing argument is unpreserved, because while Greer objected to the State's comments, he failed to move for a mistrial. See State v. Guzman , 2001 WI App 54, ¶ 25, 241 Wis. 2d 310, 624 N.W.2d 717 (to preserve objection to State's closing argument, defendant "was obligated to make a contemporaneous objection and move for a mistrial"). Perhaps in anticipation of this argument, Greer argues without elaboration[1] that the trial court's decision was a "plain error" that deprived him "of his right to a fair trial and right to due process[.]" "Under the doctrine of plain error, an appellate court may review error that was otherwise [forfeited] by a party's failure to object properly or preserve the error for review as a matter of right." State v. Mayo , 2007 WI 78, ¶ 29, 301 Wis. 2d 642, 734 N.W.2d 115.
¶ 12 In this case, however, we discern no error, plain or otherwise. The trial court authorized the State to make an argument expressly permitted by law.
¶ 13 In Sblendorio , multiple defendants were tried in connection with a scheme to defraud Medicaid. See id. , 830 F.2d at 1384-85. The government "did not call all potential witnesses ... and lawyers for some of the defendants went to town during closing argument." See id. at 1390. In rebuttal, the prosecutor told the jury that the defendant has subpoena power, just like the government, and there was at least one witness who could have been subpoenaed in support of a defense theory but was not so summoned. See id. at 1390-91. The defendants argued that the government's remarks were improper and required a new trial. See id. at 1391.
¶ 14 The Seventh Circuit disagreed. While acknowledging that the government cannot comment on the defendant's failure to call witnesses if the only potential witness is the defendant himself, the court held that:
[t]he defendant's decisions about evidence other than his own testimony do not implicate the privilege [against self-incrimination], and a comment on the defendant's failure to call a witness does not tax the exercise of the privilege. It simply asks the jury to assess the value of the existing evidence in light of the countermeasures that were (or were not) taken.
Id. at 1391. Thus, as the trial court noted, "the prosecutor may imply that the failure of the defense to present available evidence ... in opposition to the government's witnesses supports a conclusion that the government's witnesses are reliable." See id. at 1392. Subsequently, in Patino , this court determined that the Seventh Circuit's approach in Sblendorio was "sensible and we expressly adopt[ed] it." See Patino , 177 Wis. 2d at 382. In this case, the State was allowed to, and did nothing more than, argue the inference specifically allowed by Sblendorio .
¶ 15 It is true that in both Sblendorio and Patino , the defense made an argument that caused the government to comment, in rebuttal, on the defense's failure to present certain evidence by calling or better examining some witnesses. See Sblendorio , 830 F.2d at 1394 ("[O]nce the defendant has opened the subject, two can play."); Patino , 177 Wis. 2d at 380. However, neither case expressly requires the defendant to "open the door" before the prosecutor is allowed to argue that the defendant's failure to call a witness supports an inference that the government's witnesses are reliable.
¶ 16 Moreover, even if the defendant was required to unequivocally open the door, and even if the trial court erred in concluding Greer had done so in this case, we conclude that any such error is harmless. An "error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " State v. Hunt , 2014 WI 102, ¶ 26, 360 Wis. 2d 576, 851 N.W.2d 434 (citation omitted). "The error, however, must be 'obvious and substantial,' " as we are to "use the plain error doctrine sparingly." See State v. Jorgensen , 2008 WI 60, ¶ 21, 310 Wis. 2d 138, 754 N.W.2d 77 (citation omitted).
¶ 17 Greer does not precisely explain just how the State's argument deprived him of due process or his right to a fair trial. However, the trial court expressed initial concern that such an argument might shift the burden of proof, which is what was argued in both Sblendorio and Patino . See Sblendorio , 830 F.2d at 1391, 1393 ; Patino , 177 Wis. 2d at 382.
¶ 18 But as Sblendorio explained, commenting that a defendant could produce a witness if he wanted to "does not alter the burden of proof or penalize the exercise of a constitutional right." See id. , 830 F.2d at 1393. As long as it does not invite an inference based on the defendant's own silence, the government "may pursue evidentiary inferences for what they are worth." See id. Such commentary "is an accurate piece of information combined with a legitimate argument. The jury is entitled to know that the defendant may compel people to testify; this legitimately affects the jury's assessment of the strategy and evidence." See id. at 1393-94.
¶ 19 Moreover, the jury was informed multiple times-by the trial court in jury instructions, by defense counsel, and by the State-that the burden of proof was on the State. "We presume that the jury follows the instructions given to it." State v. Truax , 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Thus, in light of the trial court's jury instructions and both parties' emphasis that the State had the burden of proof, we are not persuaded that allowing the State to comment on Greer's failure to call a particular witness improperly shifted the burden of proof or otherwise constitutes an obvious and substantial error.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

This court may decline to consider undeveloped arguments. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).