COURT OF APPEALS
DECISION
DATED AND FILED

December 20, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2048-CR**

Cir. Ct. No. **2016CF235**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHRISTOPHER A. GROVER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sawyer County: JOHN M. YACKEL, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Christopher Grover appeals from a judgment convicting him of fifteen criminal offenses and from an order denying his motion

for postconviction relief.  Grover argues that he was deprived of a fair trial because one of the jurors had a financial interest in the case and was therefore statutorily biased under WIS. STAT. § 805.08(1) (2019-20).[1]  Grover also argues that the circuit court lacked jurisdiction over the offenses charged in this case because Grover is an enrolled member of the Lac Courte Oreilles Band of Lake Superior Chippewa Indians ("the Tribe") and the offenses took place on tribal land.  We conclude that Grover forfeited his juror bias claim, and we reject his jurisdictional argument on the merits.  We therefore affirm.

## BACKGROUND

¶2      An Information charged Grover with a total of fifteen counts: five counts of arson of a building; four counts of arson of property other than a building; and six counts of criminal damage to religious property.  The charges were based on allegations that Grover had set multiple fires on July 14, 2012, on property related to the Tribe's traditional religious practices.  Some of the buildings and items of property damaged by the fires were owned by the Tribe, and some were owned by individuals.

¶3      Grover entered not-guilty pleas to each of the charges, and the case proceeded to a jury trial.  During jury selection, the circuit court asked Juror J.M.[2] a series of questions.  In response to those questions, Juror J.M. stated that he was not familiar with any of the witnesses that might be called, he was not related to

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] In the interest of confidentiality, we refer to Juror J.M. using his initials, rather than his full name.

any of the parties or the attorneys, and he did not know any of the parties or the attorneys socially. The court later asked the prospective jurors, "Do any of you have any financial interest in the outcome of this case?" None of the prospective jurors responded to that question in the affirmative, including Juror J.M.

¶4 Thereafter, during the State's questioning of the prospective jurors, the prosecutor noted that the fires in this case "were on property that [is] owned by the Lac Courte Tribe or members of that Tribe" and "[m]any of those properties had religious significance for those Tribal members." The prosecutor then asked, "[I]s there anybody o[n] the jury panel who is a member of the Tribe?" In response, Juror J.M. apparently indicated that he is a member of the Tribe. The prosecutor then asked, "Would that cause you any difficulty being fair and impartial in this case?" Juror J.M. responded, "I don't think so, no."

¶5 After the State finished questioning the prospective jurors, Grover's attorney asked the prospective jurors additional questions. Grover's attorney did not inquire further into Juror J.M.'s status as a member of the Tribe. The State and the defense then exercised their peremptory strikes. Grover did not use a peremptory strike to remove Juror J.M. from the panel, and the circuit court announced Juror J.M. as a member of the jury. When the court asked whether anyone objected to the jurors being sworn, Grover's attorney responded, "No, Judge." The jurors were then sworn.

¶6 At the conclusion of the trial, the jury found Grover guilty on all fifteen counts. The circuit court later sentenced Grover to a total of twenty-five years of initial confinement and twenty-one years and six months of extended supervision, followed by a total of twenty years of probation.

¶7    Grover's attorney moved for postconviction relief on two grounds. First, counsel asserted that Grover was entitled to a new trial because Juror J.M. was statutorily biased under WIS. STAT. § 805.08(1).   Specifically, counsel asserted that Juror J.M. had a financial interest in the case, which he concealed from the circuit court during jury selection, because he was both a member and an elder of the Tribe.   Counsel noted that the Tribe owned some of the property damaged by the fires and asserted that "[t]he loss in value and/or repair or replacement of the Tribal property was borne by the Tribe except for that covered by insurance after the deductible was met."   Counsel argued that these costs "detracted from the net profits of Tribal operations" and that the "net annual proceeds of the Tribe [are] distributed to enrolled members and elders in a manner determined by the Tribal Council."   Counsel therefore asserted that the outcome of this case affected Juror J.M.'s financial interests as both a member and an elder of the Tribe.

¶8    Second, Grover's attorney argued that the circuit court lacked jurisdiction over the offenses charged in this case because Grover was a member of the Tribe and the offenses occurred on tribal land.   Counsel acknowledged that 18 U.S.C. § 1162 (2018),[3] more commonly known as Public Law 280, "grant[s] the State of Wisconsin jurisdiction over conduct on Indian reservations that violates a state criminal law."   Counsel asserted, however, that the "landscape for State jurisdiction over offenses in Indian Country" was "upended by" the United States Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. ___, 140 S. Ct. 2452 (2020).   Counsel argued that under *McGirt*, the federal government alone

---

[3] All references to the United States Code are to the 2018 version.

had jurisdiction over Grover's offenses. Accordingly, counsel asserted that the state law charges against Grover should have been dismissed for lack of jurisdiction.[4]

¶9    The circuit court scheduled a hearing on Grover's postconviction motion. Before the hearing, Grover's attorney subpoenaed Chairman Louis Taylor, an elected tribal official, to testify and produce documents. The Tribe moved to quash the subpoena, asserting sovereign immunity and official immunity and arguing that the request improperly called for the disclosure of confidential tribal information.

¶10    During the subsequent hearing, the circuit court heard arguments from both parties regarding the issues raised in Grover's postconviction motion. The court then denied the motion in an oral ruling. First, the court concluded that it had jurisdiction to preside over Grover's criminal case under Public Law 280. Second, the court ruled that Juror J.M. did not have a financial interest in this case that would disqualify him from serving as a juror under WIS. STAT. § 805.08(1). The court stated that it had enough information to decide the juror bias issue without hearing testimony from any witnesses that Grover wished to call. Accordingly, the court determined that it did not need to address the Tribe's

---

[4] Grover also filed a pro se supplement to counsel's postconviction motion, which contained an additional argument regarding the jurisdictional issue. Specifically, Grover argued that Public Law 280 was not properly enacted and therefore did not validly grant the State jurisdiction over criminal offenses committed by tribe members on tribal land. Grover does not develop any argument on appeal that Public Law 280 was not properly enacted. To the contrary, he concedes on appeal that "existing precedent from the United States Supreme Court" holds that Congress had authority to "abrogate treaties to confer jurisdiction upon states over Indian tribe members for offenses on historic Indian land." Grover's appellate argument regarding jurisdiction is premised solely on the United States Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. ___, 140 S. Ct. 2452 (2020).

motion to quash.  The court subsequently entered a written order denying Grover's postconviction motion, and Grover now appeals.

## DISCUSSION

### I.  Juror Bias

¶11    On appeal, Grover renews his argument that he is entitled to a new trial because Juror J.M. was statutorily biased.  A person who has a financial interest in a case is statutorily biased under WIS. STAT. § 805.08(1) and is therefore prohibited from serving on the jury in that case "regardless of his or her ability to be impartial." *State v. Faucher*, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999).  Grover contends that Juror J.M. had a financial interest in this case because:  (1) Juror J.M. is a member and elder of the Tribe; (2) Juror J.M. receives distributions from the Tribe due to his status as a tribe member and elder; and (3) the financial losses that the Tribe suffered as a result of Grover's conduct would have affected the amount of money that the Tribe distributed to its members and elders.

¶12    We agree with the State that Grover forfeited his juror bias claim by failing to object during voir dire.  A criminal defendant has a constitutional right to be tried by an impartial jury.  *State v. Funk*, 2011 WI 62, ¶31, 335 Wis. 2d 369, 799 N.W.2d 421.  However, claims of constitutional errors, even structural errors, may be deemed forfeited if a timely objection is not made.  *See State v. Pinno*, 2014 WI 74, ¶¶7-8, 356 Wis. 2d 106, 850 N.W.2d 207.  The *Pinno* court explained that "[i]t would be inimical to an efficient judicial system if a defendant could sit on his hands and try his luck" at trial despite a structural error, "only to argue after his conviction" that his constitutional rights had been violated.  *Id.*, ¶7.

¶13   "The necessity of lodging an adequate objection to preserve an issue for appeal cannot be overstated." *State v. Agnello*, 226 Wis. 2d 164, 172, 593 N.W.2d 427 (1999).  The requirement of a contemporaneous objection exists "so that both parties and courts have notice of the disputed issues as well as a fair opportunity to prepare and address them in a way that most efficiently uses judicial resources." *Id.*  Stated differently, "[t]he purpose of the contemporaneous objection is to allow the [circuit] court to correct any alleged error with minimal disruption."  *State v. Guzman*, 2001 WI App 54, ¶25, 241 Wis. 2d 310, 624 N.W.2d 717.

¶14   This court has repeatedly held that claims of juror bias are forfeited if an objection is not presented to the circuit court during voir dire. *See, e.g.*, *State v. Thomas*, 2021 WI App 55, ¶43, 399 Wis. 2d 277, 963 N.W.2d 887; *State v. Brunette*, 220 Wis. 2d 431, 440, 583 N.W.2d 174 (Ct. App. 1998); *State v. Olexa*, 136 Wis. 2d 475, 482, 402 N.W.2d 733 (Ct. App. 1987).  We see no reason to depart from that rule in the instant case.  During voir dire, Juror J.M. disclosed that he was a member of the Tribe.  Despite that revelation, Grover did not object to Juror J.M. serving on the jury or argue that Juror J.M.'s tribal membership—and any resultant financial interest in the case—provided a basis for the circuit court to strike him for cause.  By failing to object before the jury was sworn, Grover prevented the parties from eliciting further information about Juror J.M.'s possible financial interest in the case and also prevented the court from correcting the alleged error in a timely manner.

¶15   In his postconviction motion, Grover argued that he did not forfeit his juror bias claim because he and his attorney were "unaware" of Juror J.M.'s financial interest in the case until after Grover was convicted.  This argument is unpersuasive.  Grover and his attorney were made aware during voir dire that

Juror J.M. was a member of the Tribe. As a member of the Tribe himself, Grover would have been aware that tribe members receive distributions from the Tribe. Grover could also reasonably infer—based on the alleged damage to tribal property—that the Tribe had suffered financial losses due to the offenses charged in this case. Under these circumstances, it was incumbent upon Grover and his attorney to object to Juror J.M. serving on the jury based on his possible financial interest in the case or to make reasonable inquiries to determine whether Juror J.M. had such a financial interest due to his status as a member of the Tribe. They did not do so.

¶16    In his reply brief on appeal, Grover also asserts that he did not forfeit his juror bias claim because Juror J.M.'s response to the circuit court's question asking whether any of the prospective jurors had a financial interest in the case was "inaccurate." Grover suggests that he and his attorney were "deceived" by Juror J.M.'s inaccurate response to that question, which excuses their failure to object. This argument fails because Grover's juror bias claim is based on Juror J.M.'s status as a member of the Tribe, which Juror J.M. accurately disclosed during voir dire. Given that knowledge, and the other facts available to them at the time, Grover and his attorney had enough information to raise the juror bias claim that Grover later raised in his postconviction motion, regardless of Juror J.M.'s failure to respond in the affirmative when the court asked whether any

juror had a financial interest in the case. We therefore agree with the State that Grover forfeited his juror bias claim, and we decline to address that claim further.[5]

## II. Jurisdiction

¶17 Grover next argues that the circuit court erred by rejecting his jurisdictional argument. Based on the United States Supreme Court's decision in *McGirt*, he contends that only the federal government has jurisdiction to prosecute "enrolled Indians such as Grover that are alleged to have committed offenses such as arson in areas that are part of Indian Country." Grover therefore contends that the State had no authority to prosecute him for the crimes charged in this case and the circuit court had no jurisdiction over those offenses.

¶18 "State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply." *State v. Burgess*, 2003 WI 71, ¶12, 262 Wis. 2d 354, 665 N.W.2d 124 (citation omitted). In 1953, however, Congress enacted Public Law 280, which "expressly granted certain states, including Wisconsin, jurisdiction over criminal offenses and certain civil causes of action arising in 'Indian country.'" *Burgess*, 262 Wis. 2d 354, ¶12.

---

[5] Grover does not argue that his trial attorney was constitutionally ineffective by failing to object to Juror J.M. serving on the jury or by failing to question Juror J.M. further regarding his financial interest in the case. We will not abandon our neutrality to develop arguments for Grover. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

In his reply brief, Grover contends that the State forfeited its forfeiture argument by failing to raise that argument in response to Grover's postconviction motion. The forfeiture rule, however, "generally applies only to appellants, and we will usually permit a respondent to employ any theory or argument on appeal that will allow us to affirm the [circuit] court's order, even if not raised previously." *Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶42, 274 Wis. 2d 719, 685 N.W.2d 154.

¶19    Specifically, Public Law 280 provides:

Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory[.]

18 U.S.C. § 1162(a). Wisconsin is one of the states listed in the table. *Id.* The table specifies that the "Indian country affected" within Wisconsin is "[a]ll Indian country within the State."[6] *Id.*

¶20    Here, it is undisputed that Grover is an enrolled member of the Tribe. Grover further asserts that the offenses in this case occurred "on historic Tribal land." Given these facts, Grover does not dispute that Public Law 280, on its face, gives Wisconsin jurisdiction over his crimes. Grover also concedes that

---

[6] For the purposes of Public Law 280, "Indian country" is defined to mean:

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

18 U.S.C. § 1151.

The Wisconsin Supreme Court has noted that "all Indian country in Wisconsin is subject to [Public Law 280], except for the Menominee Tribe, which is specifically exempt." *State v. Burgess*, 2003 WI 71, ¶12 & n.3, 262 Wis. 2d 354, 665 N.W.2d 124. Grover does not argue that the crimes at issue in this case took place on Menominee land.

"existing precedent from the United States Supreme Court" holds that Congress had authority to enact Public Law 280. Grover argues, however, that this court should "consider the continued vitality" of that prior case law in light of the Supreme Court's recent decision in *McGirt*.

¶21 Grover's reliance on *McGirt* is misplaced. In *McGirt*, the primary issue was whether McGirt had committed his crimes in "Indian country" for purposes of the federal Major Crimes Act (MCA), 18 U.S.C. § 1153. *See McGirt*, 140 S. Ct. at 2459, 2480 ("The only question before us … concerns the statutory definition of 'Indian country' as it applies in federal criminal law under the MCA."). The MCA provides that "[a]ny Indian who commits" certain enumerated offenses "within the Indian country" "against the person or property of another Indian or other person" "shall be subject to the same law and penalties as all other persons committing any of the [enumerated] offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a). The *McGirt* Court held that the Creek Nation's reservation in eastern Oklahoma, where McGirt's crimes took place, had never been properly disestablished and therefore remained "Indian country" for purposes of the MCA. *McGirt*, 140 S. Ct. at 2459-60, 2467-68, 2474. Because "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country,'" *id.* at 2459, the State of Oklahoma lacked jurisdiction over McGirt's crimes.

¶22 Unlike Oklahoma, when Congress enacted Public Law 280, it expressly granted Wisconsin "jurisdiction over offenses committed by or against Indians" in "[a]ll Indian country within the State."[7] 18 U.S.C. § 1162(a).

---

[7] Unlike Wisconsin, Oklahoma is not one of the six states listed in the table in 18 U.S.C. § 1162(a).

Moreover, Public Law 280 specifically states that the MCA "shall not be applicable within the areas of Indian country listed in subsection (a) of this section as areas over which the several States have exclusive jurisdiction." 18 U.S.C. § 1162(c). In other words, the MCA is not applicable to Indian country within the State of Wisconsin. Accordingly, Public Law 280 governs, and *McGirt*'s holding is not applicable in Grover's case.[8]

¶23 Ultimately, we agree with the State that "Wisconsin's ability to prosecute Indians for crimes committed in Indian Country is well-settled," and Grover has provided "no reason why this Court could upend that precedent." We therefore reject Grover's argument that the circuit court lacked jurisdiction over his crimes.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Notably, the Minnesota Supreme Court recently reached the same conclusion in *Martin v. State*, 969 N.W.2d 361, 364-65 (Minn. 2022). Similar to Wisconsin, Public Law 280 grants Minnesota jurisdiction "over offenses committed by or against Indians" in all Indian country within Minnesota, with the exception of one specific reservation. 18 U.S.C. § 1162(a).